BURLINGTON, CEDAR RAPIDS & NORTHERN RAILWAY COMPANY, Appellee, v. PETER A. DEY *et al.*, Railroad Commissioners of Iowa, Appellants.

1. **Railroads**: FREIGHT TRAFFIC: JOINT RATES: POWER OF STATE TO ESTABLISH. Chapter 17 of the Acts of the Twenty-third General Assembly, amending chapter 28 of the Acts of the Twenty-second General Assembly, providing that all railway companies within this state shall, upon the demand of any person interested, establish joint through rates for the transportation of freight between

points on their respective lines within this state, and making it the duty of the board of railroad commissioners, in the event of said railroad's failure to so act, to establish such joint rates for the shipments of freight and cars, and providing that the rates thus fixed shall be taken in all the courts of this state as *prima facie* evidence that they are reasonable and just, and that any greater charge by any railroad company shall be deemed extortion, is not unconstitutional as abridging the privileges and immunities of said railroad companies, by compelling them to enter involuntarily into contract relations with each other, but imposes upon said companies a duty to make such rates or to accept those fixed by the railroad commissioners as *prima facie* reasonable and just if they fail to act as required by law.

2. ———— : ———— : ———— : TRANSFER OF CARS. The provision in said act that carload lots shall be transferred without unloading, unless done without charge to the shipper or receiver of such shipments, being in accord with the course of business long practiced by railroad companies, and it being the duty of the commissioners to aid the railroad companies in this matter by the making and enforcement of proper rules for compensation to the companies for the use of the cars so transferred, and for their ultimate return, the duty thus imposed cannot be regarded as interfering with the constitutional guarantees for the protection of the rights and property of such companies. [ROTHROCK AND ROBINSON, JJ., *dissenting.*]

3. ———— : ———— : ————. The authority of the state to limit or control the rates or charges made by railroad companies for the transportation of freight extends to "joint through rates" between points within the state.

4. ———— : ———— : ———— : DUE PROCESS OF LAW. The authority conferred by the above statute upon the board of railroad commissioners to establish joint through rates for the transportation of freight, after notice to the railroad companies affected thereby, does not operate to deprive such railroad companies of their property without due process of law.

5. ———— : ———— : ———— : ————. The provisions in such statute that the joint rates fixed by the commissioners shall be taken in all of the courts of this state as *prima facie* evidence that they are reasonable and just, and that any greater charge by such companies shall be deemed extortion, simply prescribes a rule of evidence, and does not prevent said companies from having the question of the reasonableness of the rates so fixed determined in any of the courts of this state. [ROTHROCK AND ROBINSON, JJ., *dissenting.*]

6. ———— : ———— : ———— : INTER-STATE COMMERCE. Whether such joint rates affecting only traffic between cities of the same state, but involving the transportation of freight from the one city to the other by a railroad company organized under the laws of this

state, whose route lies partly in another state, and which, in the course of such transportation, carries the merchandise within the jurisdiction of the other state, would be a regulation of inter-state commerce, *quære.*

7.     ———— : ———— : ———— : ATTORNEY FEES. The provision in said act entitling the plaintiff in actions against a railroad company for a breach of its provisions to recover, in addition to the damages therein provided for, an attorney's fee, grants no privilege to such litigants that is forbidden by the constitution; nor can it be regarded as imposing a penalty upon the exercise of the right of defense.

8.     ———— : ———— : ———— : STATUTES : CERTAINTY AS TO OFFENSES CHARGED. Chapter 17 of the Acts of the Twenty-third General Assembly being amendatory to chapter 28 of the Acts of the Twenty-second General Assembly, and the offenses charged in the former act being explicitly defined in the latter, the former statute is not void for uncertainty.

9.     ———— : ———— : ———— : PENALTY : EXCESSIVE FINE. A fine of not less than one thousand dollars nor more than five thousand dollars for a first violation of any of the provisions of the above statute, and of not less than five thousand dollars nor more than ten thousand dollars for a second such offense, is not excessive within the meaning of section 17, of article 1, of the constitution of this state.

10.     ———— : ———— : ———— : EVIDENCE. The provisions of chapter 17 of the Acts of the Twenty-third General Assembly are to be read and construed with those of chapter 28 of the Acts of the Twenty-second General Assembly, and, when so construed, the joint through rates that may be established thereunder by the railroad commissioners are not thereby made conclusive, but only *prima facie,* evidence that they are just and reasonable. [ROTHROCK AND ROBINSON, JJ., *dissenting.*]

11. **Pleading**: DEMURRER : FACTS ADMITTED. Upon the consideration of a demurrer to a pleading, statements contained therein, which are based upon erroneous conclusions as to the operation of a statute will not be deemed admitted.

12. **Injunction**: DISSOLUTION ON MOTION : DISCRETION OF TRIAL COURT. Where the dissolution of an injunction involves the determination of questions of law arising upon the face of the petition, it is not a matter in which the supreme court will defer to the discretion of the district court.

13.     ———— ———— : ANSWER. Neither will such dissolution be denied because the facts alleged in the petition are not denied by answer, when no issues of fact are raised by such motion.

14. **Statutes**: PUBLIC POLICY. The justice and policy of statutes enacted by the legislative department of the government are not matters for the consideration of the courts of the state.

*Appeal from Johnson District Court.*—Hon. S. H. Fairall, Judge.

Monday, February 9, 1891.

This is an action in chancery to restrain and enjoin the defendants, acting as railroad commissioners of the state, from establishing and promulgating joint rates of charges for the transportation of freight and cars over the plaintiff's railroad and other connecting lines. Upon the petition, before it was filed, an injunction was allowed, which, after the filing of the petition, the defendants moved to dissolve. The motion was overruled, and from the order to that effect the defendants appeal.—*Reversed.*

John Y. Stone, for appellants: There is no common law requiring joint rates among transportation companies. *Atchison, Topeka & Santa Fe Ry. Co. v. Railroad,* 110 U. S.; *Express Cases* in 17 U. S. It is the province of statutes to supply deficiencies and correct the provisions of the common law. No provision is made by which cars are required to be returned to the owner, because that matter is left as it was before when one company remitted to another the use of its cars without making a special contract therefor. It is not denied that the legislature may impose regulations as to a single company in the matter of transportation. If the transportation business of the country may be facilitated by requiring the performance of certain joint duties, why should they not be as well required as the performance of single duties? Whatever these connecting companies may do by contract in the matter of facilitating the transportation of goods, they can be required to do by legislative enactment. The act of 1890 does not in the least disturb the common-law status of the companies in cases of joint transportation. It simply proposes to fix a joint rate for all this service and provide a means to divide it equitably among the carriers performing the service. The presumption is that the joint rate thus

fixed will be the equivalent of a reasonable compensation to all these carriers for all their joint services, and to each of them for its share of the work. The joint rate law is an amendment to chapter 28, Acts of the Twenty-second General Assembly, where a provision is inserted making the commissioners' schedule *prima facie* evidence of their reasonableness. It is apparent that in the latter part of section 3 of the joint-rate act a like provision was unmistakably intended to be inserted, making the schedules of joint rates for the transportation of freight and cars *prima facie* evidence of their reasonableness. If the general assembly failed to make its meaning entirely clear, or even if it left it very obscure, it is no reason why the legislative intent may not be clearly ascertained. All the parts of an act must be given effect if possible. It will be noticed that if the word " that, " where it last appears in said section, is held to mean " for," or even " of," the language of the provision becomes reasonably clear. It is perfectly proper and within the rules of construction for this court to make such a modification. *State v. Myers*, 10 Iowa, 448; *State v. Bryant*, 41 Iowa, 593; *State v. Smith*, 46 Iowa, 670; *Eisfield v. Kenworthy*, 50 Iowa, 389; *Small v. Railroad*, 50 Iowa, 338; *Ottrogge v. Schutte*, 51 Iowa, 279; *Dilger v. Palmer*, 60 Iowa, 117; *Williams v. Poor*, 65 Iowa, 410; *Glass v. Cedar Rapids*, 68 Iowa, 2; *Crabell v. Coal Co.*, 68 Iowa, 751; *Wood v. Farmer*, 69 Iowa, 533; *Stephens v. Davenport*, 36 Iowa, 372. When a doubtful statute, susceptible of two constructions, one of which will give effect to the whole, and the other render inoperative a portion thereof, the former should prevail. *Rheim v. Robbins*, 20 Iowa, 45; *Rhodes v. Bank*, 52 Iowa, 375; *Sprout v. Kelly*, 37 Iowa, 44; *District Twp. v. Dubuque*, 7 Iowa, 262. A cardinal rule of construction is, that courts shall give force to every part of the statute so far as they can consistently do so. *Birge v. Railroad*, 65 Iowa, 440; *Burger v. Frakes*, 67 Iowa, 460. *Chicago Ry. Co. v. Minnesota*, 134 U. S. 418, is not in point. The common-law courts are

open to determine the reasonableness of the fixed rates. The purpose of the act on this point is to establish a rule of evidence only, not to change a substantial right. Nothing but the burden of proof is changed, which, it is well settled, it is clearly competent to do.

*A. K. Tracy, John C. Bills* and *A. E. Swisher,* for appellee :   The first section of chapter 28 of the Acts of the Twenty-second General Assembly is void for that it attempts to regulate commerce between different states, and is, therefore, in violation of section 8, of article 2, of the United States constitution.   *Sternberg v. Railroad,* 7 S. E. Rep. 836 ; *State v. Warehouse Commissioners,* 41 N. W. Rep. 147 ; *Pacific Co. v. Railroad Commissioners,* 8 Fed. Rep. 10 ; *New Orleans Cotton Ex.,* 2 Inter-State Com. Rep. 375 ; *Lord v. Steamship Co.,* 102 U. S. 541.   Sections 9 and 16 of chapter 28, Acts, Twenty-second General Assembly, are void, in that they attempt to grant to one class of citizens privileges or immunities which, upon the same terms, do not equally belong to all citizens.   The plaintiff is a citizen, and as such it is entitled to the protection of its rights to the same extent as any private individual.   *Santa Clara Co. v. Railroad,* 13 Am. & Eng. R. R. Cases, 99–204 ; 118 U. S. 396.   Under the following authorities this section ( which would be applied in the enforcement of the joint rate ) is void :   *Wilder v. Railroad,* 38 N. W. Rep. 289 ; *Williams v. Railroad,* 31 Am. & Eng. R. R. Cases, 555 ; *Moss v. Railroad,* 20 Am. & Eng. R. R. Cases, 555.   The statute is void for uncertainty in not defining the offenses for which excessive penalties are imposed.   Dwarris on Statutes, star p. 652 ; *United States v. Sharp,* 1 Peter, C. C. 122 ; *Schooner v. Enterprise,* 1 Paine, C. C. 34 ; Bishop on Statutory Crimes, sec. 41 ; Lieber, Hermeneutics, p. 157 ; *Ex Parte Jackson,* 45 Ark. 158 ; *McConville v. Mayor,* 39 N. J. ( 10 Vroom ) 38 ; 13 N. Y. 455 ; *Louisville & N. Ry. Co. v. Railroad Commissioners,* 19 Fed. Rep. 79.   The punishment provision is an imposition of excessive fines and

penalties such as are prohibited by the state constitution, and is, therefore, void. Section 16 is void for the reasons: *First*, that in all actions for the enforcement of joint rates, or other orders of the railway commission, it abolishes the distinction between law and equity jurisdictions; and, *second*, appellee is, by said section, denied that due process of law guaranteed by the constitution. *Clauson v. Lafranz*, 4 Greene, 224; Cooley, Con. Law, 376. Under this statute there is no assurance that the other roads will execute the contract, or that appellee will be compensated unless the charge is made in advance, nor is there any provision made for the care of its cars while in the hands of strangers or possible rivals; nor when they are to be returned, nor who is to pay for the delay or damage to them? Cooley on Con. Limitations, 697; *Shepperdson v. Railroad*, 6 Wis. 578; *Walker v. Warner*, 25 Mo. 277; *Ash v. Cummings*, 50 N. H. 615; *Kentucky Bridge Co. v. Railroad*, 37 Fed. Rep. 628; *Little Ry. Co. v. Railroad*, 41 Fed. Rep. 559. Under these statutes private property is taken for public use without just compensation; the right to protect and defend property as guaranteed by the two constitutions is denied; equal protection of the law is refused, and the right of jury trial is violated; greater burdens are imposed on railway companies than on others in the obtainment of justice, and due process of law is denied them under the statute. *San Mateo Co. v. Railroad*, 8 Am. & Eng. R. R. Cases, 11; *People v. Railroad*, 44 N. W. Rep. 934; *Fleming v. Hall*, 35 N. W. Rep. 684; *Santa Clara Co. v. Railroad*, 13 Am. & Eng. R. R. Cases, 195; *Pensacola Ry. Co. v. State*, 37 Am. & Eng. R. R. Cases, 579. The statute establishes absolute rates, which are final and conclusive as to whether the same are just and reasonable. A court cannot supply omissions in a legislative act. *Ripley v. Gifford*, 11 Iowa, 369; *United States v. Railroad*, 91 U. S. 85; *Tyman v. Walker*, 35 Cal. 642; *Encking v. Simmons*, 28 Wis. 276; *Chicago Ry. Co. v. Minnesota*, 134 U. S. 418. The continuance or dissolution of a preliminary writ of injunction rests very

·much in the ∟ound discretion of the court originally
·passing upon the question.    *Walker v. Stone,* 70 Iowa,
·103; *Kelley v. Briggs,* 58 Iowa, 332.

   *T. S. Wright* and *J. W. Bythe,* for appellee:
·Chapter 17 of the Laws of the Twenty-third General
Assembly, and certain provisions of the law of which
·it is amendatory, are obnoxious to the constitution of
the state of Iowa and of the United States.    A joint
·through rate cannot be made by one company which
will .be binding on another without the latter's consent.
·*Crossan v. Railroad,* 149 Mass. 196.    There must be,
then, an agreement as to a joint through rate before all
·of the carriers interested in such rate are bound by the
rate.    *Kentucky & Indiana Bridge Co. v. Railroad,*
·2 Inter-State Commerce Com'n Rep. 191; *In re Applica-
.tion of Clark,* 3 Inter-State Commerce Com'n· Rep. 650;
*Turner v. Railroad,* 3 R. & C. Traffic Cases, 79.    The .
law seeks to compel, *first,* that two or more compa-
·nies shall enter involuntarily into contract relations
·with each other at the demand of a third person;
*second,* that one company shall surrender its cars to the
possession of another, or unload the contents ·without
·compensation; *third,* that, at the demand of a third
person, companies shall not only part with the posses-
sion of their cars, with no provision in the law as to
their return or compensation for their use, but shall
.accept cars of other companies and carry the same over
its lines without any provision for compensation.    These
severe requirements of the statute we hold to be in vio- ·
lation of, and prohibited by, the constitution of the state
.and of the United States.    Morawetz on Corp. [2 Ed.]
1047; *Clearwater v. Meredith,* 11 Wall. 25; *Sinking
Fund Cases,* 99 U. S. 100; Cook's Corp. Law, 495;
Morawetz on ·Corp. 1049–1057; Taylor's Law of Corp.
·449, 450; *Zabriskie v. Railroad,* 18 N. J. Eq. 178.
The statute is unconstitutional for the further reason
·that it .deprives the plaintiff of liberty and property
without due process of law.    Cooley's Constitutional
.Limitations [4 Ed.] p. 284; *Hasbrouck v. Milwaukee,*

13 Wis. 42; *Marshall v. Silliman*, 61 Ill. 218; *People v. Mayor*, 51 Ill. 17; *Railroad v. City*, 77 Ill. 505; *Park Commissioners v. Detroit*, 28 Mich. 228; *Munn v. Illinois*, 94 U. S. 142; *People ex rel. Kuhn v. Common Council*, 38 N. W. Rep. 470; *Railroad v. Dey*, 38 Fed. Rep. 656; *Dow v. Biedleman*, 125 U. S. 680; *Stone v. Farmers L. & T. Co.*, 116 U. S. 307; *Railroad v. Minn.*, 134 U. S. 418. The law is unconstitutional because it seeks to give to the railroad commissioners the power to make joint rates for the plaintiff. The question of the reasonableness of a rate charged by a railroad company is a judicial, and not a legislative, question. *Railroad v. Minn.*, *supra*. The whole structure of the law is unrepublican, and contrary to the spirit of our free institutions, and is in violation both of the written and of that unwritten constitution which lies behind our whole form of government, and which cannot be impaired by the laws. Baxter, J., in *Railroad v. Railroad Commissioners*, 19 Fed. Rep. 679; Field, J., dissenting, in *Stone v. Railroad*, 116 U. S. 347. If, under the plea that the property of the plaintiff is impressed with a public interest, its right to contract when and with whom it will may be taken away from it in the manner provided by this statute, then equally may its track be taken for another public use without compensation and without process of law, a result everywhere conceded to be impossible.

Beck, C. J.—I. In view of the facts that the motion to dissolve the injunction operates as a demurrer to the petition, and that the decision thereon is for review in this case, it becomes necessary to set out fully the pleadings upon which the decision was made. They are as follows:

"Petition in Equity. Your petitioner, the Burlington, Cedar Rapids & Northern Railway Company of Iowa, a corporation, duly organized and existing under and by virtue of the laws of Iowa, complains and says: That defendants, Peter A. Dey, Spencer Smith and F. T.

Campbell, compose the board of railroad commissioners of the state of Iowa. That under and by virtue of chapter 28 of the Acts of the Twenty-second General Assembly, authority is given to said board to fix, establish and publish reasonable maximum rates of charges for the transportation of freight upon railroads within said state. That a schedule of rates has been adopted by said board for petitioner, which was by it duly accepted and adopted as reasonable and just.

"Your petitioner would now further show that by the act of the twenty-third general assembly, entitled 'An act to amend chapter 28 of the Acts of the Twenty-second General Assembly, giving authority for the making of rates for transportation of freight and cars over two or more lines of railroad within this state, and enlarging the powers and further defining the duties of the board of railroad commissioners,' a copy of which act is attached hereto and made part hereof, it is provided that all railway companies doing business in this state, upon the demand of any person, shall establish joint rates for the transportation of freight between points on their respective lines, and shall receive and transport freight and cars over such routes as the shipper shall direct. It is further provided by said chapter 28 of the Acts of the Twenty-second General Assembly that, when the rates for transportation charges are fixed by the board of railroad commissioners, such rates shall, in all suits brought against any railroad company, wherein is in any way involved the charges of such railroad for the transportation of freight, be deemed and taken in all courts of this state as *prima facie* evidence that the rate thus fixed is a reasonable and just charge for the transportation of freight and cars upon such roads, and that any greater charge shall be deemed extortion. And it is further provided in said chapter 28 of the Acts of the Twenty-second General Assembly that, for violating the charges or rates thus fixed by the board, the penalty therefor is to forfeit and pay to the state of Iowa not less than one thousand dollars ($1,000) nor more than five thousand dollars

($5,000) for the first offense, and not less than five thousand dollars ($5,000), nor more than ten thousand dollars ($10,000) for every subsequent offense, to be recovered in a civil action, by ordinary proceedings, in the name of the state of Iowa.

"Your petitioner would now further inform your honor that several demands have been sent to it under the last act, or joint-rate law, demanding that it shall make joint rates with other railroads, as is in said act contemplated. That your petitioner has refused to make such joint rates upon such requests, and still does refuse to make such joint rates with other and distinct railroads. That by said last act of the legislature (known as the 'joint-rate act') it then becomes the duty of the board of railroad commissioners, upon such refusal, and upon application of any person, to establish joint rates between different and connecting roads. That said board has been so requested by interested parties to establish joint rates between petitioner and other railroads, and is about to so do and promulgate the same, and such joint rates will be established and promulgated, unless restrained by order of this court; thus subjecting your petitioner to the heavy penalties referred to in the event of non-complying with the joint rates thus to be established and promulgated.

"Your petitioner now avers that the act of the legislature of Iowa known as the 'joint-rate bill,' a copy of which is attached, marked 'Exhibit A,' is unconstitutional and void, and said commissioners have no right or authority thereunder to fix a joint rate, or promulgate the same. That said act deprives your petitioner of its rights guaranteed by section 9, article 1, of the constitution of Iowa, in that it deprives your petitioner of its property, and the right to contract, and deprives it of liberty, without due process of law, and prevents its acquiring, possessing and protecting its property as guaranteed by section 1 of article 1 of the constitution of Iowa, and by like powers of the constitution of the United States. That if defendants are allowed and permitted to establish and promulgate such joint rates,

although the same will be void for the reasons stated, yet thereunder your petitioner will be subjected to a multiplicity of suits, by many different persons, to recover the penalties referred to, and otherwise harassed by vexatious litigation.

"To the end, therefore, that your petitioner may obtain the relief to which it is justly entitled in the premises, and being remediless at law, it now prays the court to grant it a temporary writ of injunction, restraining defendants, and each of them, and as the board of railroad commissioners, from establishing and promulgating joint rates with it in connection with other railroads, for the shipment of freight and cars over such different railroads, and that upon a final hearing it be ordered and decreed that defendants be permanently enjoined from establishing such joint rates. And, further, your petitioner prays for such other and further relief as may be just and equitable."

. "Exhibit A.

"An act to amend chapter 28 of the Acts of the Twenty-second General Assembly, giving authority for the making of rates for the transportation of freight and cars over two or more lines of railroad within this state, and enlarging the powers and further defining the duties of the board of railroad commissioners.

"Be it enacted by the general assembly of the state of Iowa:

"Sec. 1. That chapter 28 of the Acts of the Twenty-second General Assembly be, and the same is hereby, amended as follows: That said chapter 28 of the Twenty-second General Assembly shall be con-strued to prohibit the making of rates by two or more railroad companies for the transportation of property over two or more of their respective lines of railroad within this state, and a less charge by each of said railroad companies for its portion of such joint shipment than it charges for a shipment for the same distance wholly over its own line within the state shall not be considered a violation of said chapter 28 of the Acts of the Twenty-second General Assembly, and shall not

render such railroad company liable to any of the penalties of said act. But the provision of this section shall not be construed to permit railway companies establishing joint rates to make, by such joint rates, any unjust discrimination between the different shipping points or stations upon the respective lines between which joint rates are established. Any such unjust discrimination shall be punished in the manner and by the same penalties provided in chapter 28 of the Acts of the Twenty-second General Assembly.

"Sec. 2. All railway companies doing business in this state shall, upon the demand of any person or persons interested. establish reasonable joint through rates for the transportation of freight between points on their respective lines within this state, and shall receive and transport freight and cars over such route or routes as the shipper shall direct. Carload lots shall be transferred without unloading from the cars in which such shipments were first made, unless such unloading in other cars shall be done without charge therefor to the shipper or receiver of such carloads lots, and such transfer be made without unreasonable delay; and less than carload lots shall be transferred into the connecting railway's cars at cost, which shall be included in and made a part of the joint rate adopted by such railway companies, or established as provided by this act. When shipments of freight to be transported between different points within this state are required to be carried by two or more railway companies operating connecting lines, such railway companies shall transport the same at reasonable through rates, and shall at all times give the same facilities and accommodation to local or state traffic as they give to inter-state traffic over their lines of road.

"Sec. 3. In the event that said railway companies fail to establish through joint rates, or fail to establish and charge reasonable rates for such through shipments, it shall be the duty of the board of railroad commissioners, and they are hereby directed, upon the application of any person or persons interested, to

establish joint rates for the shipment of freight and
cars over the two or more connecting lines of railroad
in this state ; and in the making of such rates, and in
changing or revising the same, they shall be governed,
as near as may be, by all the provisions of chapter 28
of the Acts of the Twenty-second General Assembly,
and shall take into consideration the average of rates
charged by said railway companies for shipment within
this state or like distances over their respective lines,
and rates charged by the railway companies operating
such connecting lines for joint inter-state shipments for
like distances. The rates established by the board of
railroad commissioners shall go into effect within ten
days after the same are promulgated by said board,
and from and after that time the schedule of such rates
shall be *prima facie* evidence in all of the courts of
this state of the joint transportation of freight and cars
upon the railroads for which such schedules have been
fixed.

"Sec. 4.   Before the promulgation of such rates,
as provided in section 3 of this act, the board of rail-
road commissioners shall notify the railroad companies
interested in the schedule of joint rates fixed by them,
and they shall give said railroad companies a reason-
able time thereafter to agree upon a division of the
charges provided for in such schedule ; and, in the event
of the failure of said railroad companies to agree upon
such a division, and to notify the board of such agree-
ment, the board of railroad commissioners shall, after
a hearing of the companies interested, decide the same,
taking into consideration the value of terminal facilities,
and all the circumstances of the haul ; and the division
so determined by the board shall, in all controversies
or suits between the railroad companies interested, be
*prima facie* evidence of a just and reasonable division
of such charges.

"Sec. 5.   Every unjust and unreasonable charge
for the transportation of freight and cars over two or
more railroads in this state is hereby prohibited, and
declared to be unlawful, and each and every one of the

companies making such unreasonable and unlawful charges, or otherwise violating the provisions of this act, shall be punished as provided in chapter 28 of the Acts of the Twenty-second General Assembly for the making of unreasonable charges for the transportation of freight and cars over a single line of railroad by a single railroad company.

"Sec. 6. This act, being deemed of immediate importance, shall take effect and be in force from and after its publication in the *Iowa State Register* and the *Des Moines Leader*, newspapers published in the city of Des Moines, Iowa,"

Upon the presentation of the motion to dissolve the injunction, the plaintiff filed the following amendment to the petition: "Your petitioner, by way of amendment to the original bill filed in this cause, further avers:

"*First.* That said act known and referred to as the 'joint-rate bill,' and the act of which it is amendatory, are unconstitutional and void, in this: That under said acts your petitioner is denied the right of a jury trial, and denied due process of law, in the protection and preservation of its property, as guaranteed by the ninth section of article 1 of the constitution of the state of Iowa; that its property, or the use thereof, is taken without its consent, and without just compensation, for private and public purposes, and that its right of appeal is so tampered with as to make that right ineffectual; that in the enforcement of any order promulgated by said railroad commissioners all distinction between law and equitable actions is abolished by said acts, all of which is in direct violation of the sixth section of article 5 of the constitution of the state of Iowa, and which deprives petitioner of that due process of law therein guaranteed.

"*Second.* That said acts are violative of section 8, article 1, of the constitution of the United States, in that it is a regulation of commerce among the several states.

" *Third.* That said acts are void and unconstitutional, because they violate section 17 of article 1 of the constitution of Iowa, by imposing excessive fines and unusual punishment.

" *Fourth.* That said acts are void and inoperative, because they fail to describe or define the offenses for which the extraordinary penalties are imposed, and impose penalties, by way of attorney's fees, upon railroad companies for making any defense to actions brought under said acts.

" *Fifth.* That said joint-rate act is violative of the fourteenth amendment of the constitution of the United States, in that it abridges the privileges or immunities of your petitioner as a citizen, denies it equal protection of the laws, and deprives it of its property and the use thereof, without just compensation or due process of law; that by said acts your petitioner is denied the right and liberty of contracting with reference to its business, and thus is its property taken from it without its consent, and it is compelled to enter into involuntary, unreasonable and unprofitable contracts with other railroad companies, at the instance of third parties, compelling the operation of its road at a loss; that, in the matter of fixing the joint rates contemplated in said statute, your petitioner is not notified of the time or place when the same are to be fixed by defendants, nor given any opportunity to object to the making of such rates, or to show the unreasonableness of the same; that, under said statute, the joint rates, as thus fixed by defendants, are final and absolute, and thus is your petitioner deprived of its property and the use thereof, without due process of law, and deprived of making reasonable and lawful contracts and profits as other citizens are permitted to do, and hence it is denied that equal protection of the law guaranteed by the constitution of the United States.

" Wherefore your petitioner prays that the temporary writ of injunction issued herein may be continued until the final hearing of this cause, and that upon such

final hearing said injunction may be made perpetual; and your petitioner prays for such other and further relief as may be deemed equitable in the premises."

The motion to dissolve the injunction is based upon the ground that the statutes assailed are in harmony with the constitution; that the petition does not show that the plaintiff is entitled to the relief prayed for in the petition; and that the district court has no jurisdiction in the cause for the reason that it is, in fact, an action against the state, and it is not shown that the state had authorized or consented to the bringing of the suit. Chapter 28, Acts, Twenty-second General Assembly, which is amended by chapter 17, Acts, Twenty-third General Assembly, contains many sections. They need not be set out, except such as are brought in question or assailed in the argument of counsel. They will be cited or quoted in the discussion of the questions raised thereon.

II. The original act authorizing rates of charges to be fixed by the railroad commissioners (chapter 28, Acts, Twenty-second General Assembly) contains this provision:

"Sec. 17. The board of railroad commissioners of this state are hereby empowered and directed to make, for each of the railroad corporations doing business in this state, as soon as practicable, a schedule of reasonable maximum rates of charges for the transportation of freight and cars on each of said railroads, and said power to make schedules shall include the power of classification of all such freights; and it shall be the duty of said commissioners to make such classifications: provided, that the said rates of charges to be so fixed by said commissioners shall not, in any case, exceed the rates which are or may hereafter be established by law; and said schedules so made by said commissioners shall, in all suits brought against any of such railroad corporations, wherein is in any way involved the charges of any such railroad corporation for the transportation of any freight or cars, or unjust discrimination in relation thereto, be deemed and taken in all courts of this

state as *prima facie* evidence that the rates therein
fixed are reasonable and just maximum rates of charges
for the transportation of freight and cars upon the rail-
roads for which said schedules may have been respect-
ively prepared.   Said commissioners shall, from time to
time, and as often as circumstances may require, change
and revise said schedules, subject to the same provision
that the rates fixed are not to be higher than now
or hereafter established by law.   When any schedule
shall have been made or revised as aforesaid, it shall be
the duty of said commissioners to cause notice thereof
to be published for two successive weeks in some public
newspaper published in the city of Des Moines, in this
state, which notice shall state the date of the taking
effect of said schedule, and said schedule shall take
effect at the time so stated in such notice, and a printed
copy of said revised schedule shall be conspicuously
posted by such common carrier in each freight-office
and passenger depot upon its line or lines.   All such
schedules so made shall be received and held in all such
suits as *prima facie* the schedule of said commission-
ers, without further proof than the production of the
schedule desired to be used as evidence, with a certifi-
cate of said railroad commissioners that the same is a
true copy of the schedule prepared by them for the
railroad company or corporation therein named, and
that notice of making the same has been published as
required by law ; provided that, before finally fixing
and deciding what the original maximum rates and
classification shall be, it shall be the duty of the rail-
road commissioners to publish ten days' notice in two
daily papers published in Des Moines, setting forth in
such notice that, at a certain time and place, they will
proceed to fix and determine such maximum rates and
classification, and they shall, at such time and place,
and as soon as practicable, afford to any person, firm, cor-
poration or common carrier, who may desire it, an oppor-
tunity to make an explanation or showing, or to furnish
information to said commissioners on the subject of

determining and fixing such maximum rates and classification; and, in any event, the original schedule of rates and classification of freights, on all lines of railroads in Iowa, shall be fixed and go into effect within sixty days from the taking effect of this act."

It will be observed, upon consideration of the plaintiff's petition, that the threatened injury which it seeks to avert by the injunction in this case is the establishing, promulgating and enforcing of what in the petition are called "joint rates between petitioner and other railroads." It is important that we determine, at the door of this discussion, what are these "joint rates," the fear of which is the ground of the plaintiff's action. Section 2 of the statute above quoted provides, that "all railroad companies doing business in this state shall, upon demand of any person or persons interested, establish reasonable joint through rates for the transportation of freight between points upon their respective lines within the state." Section 3 of the same statute provides that, "in the event said railway companies fail to establish through joint rates, or fail to establish reasonable rates for such through shipments, it shall be the duty of the board of railroad commissioners, and they are hereby directed, upon application of any person or persons interested, to establish joint rates for the shipment of freight and cars over two or more lines of railroads in this state." This statute requires the railroad companies to establish "through joint rates," and in default thereof the railroad commissioners are directed to establish such rates. It is plain that the rates required are joint rates of charges for the transportation of freight and cars. See section 17, chapter 28, Acts of the Twenty-second General Assembly, above quoted. And it is equally plain that the joint rates of charges cover all the charges for the transportation over two or more roads, as though they constituted one road, the rates fixed determining the whole charges. It is also plain that these joint rates consist of the separate rates of each separate road. As their services in the transportation of the freight or cars are not always

equal, because of differences in the distances of trans-
portation, and for other reasons, the reasonable charges
which each ought to make cannot be equal.   It will be
seen at once that the railroad companies, or the railroad
commissioners, when establishing joint through rates,
must establish a rate for each road which, when united,
will be "the joint through rates."   This is an obvious
construction of the statute demanded by its language,
"through joint rates" (plural), which the railroad
companies and the railroad commissioners are required
to establish.

III.   The establishing of "through joint rates" is
the only duty to be exercised in the discharge of the
power conferred upon the railroad commissioners by
the sections of the statute just cited, which are the
occasion of plaintiff's fears of interference with its
rights, whereon this action is founded.   The plaintiff
does not allege any other ground of action than the
threatened establishing of "through joint rates."   No
other objections to the statutes in question, pertaining
to railroads and rates and joint rates, are made in the
petition; none other are before us for consideration.
It will be here seen that the statutes under considera-
tion in no way affect the duty, obligations or rights of
the plaintiff as a common carrier, further than is done
by the regulation of rates of charges.   The law relating
to the receipts and delivery of freight to connecting
lines, and the obligations and rights of consignors and
consignees and of the railroads, growing out of the
relations arising when such connecting lines exist, are
not modified, restricted nor in any way affected by
these statutes.   In short, the duty of the railroad com-
panies, as to rates and joint rates, is alone affected and
regulated by these statutes.   These conclusions will be
again brought to mind in the further consideration of
the case.

IV.   The considerations just expressed lead to the
conclusion that the power and authority vested in the
state, under which rates of charges for the transporta-
tion of freight by railroads are regulated, may be

exercised to establish what are called "joint through rates." That the state may fix the maximum charges for the transportation of freight by railroads, which shall not be unreasonable, is not disputed in this case. It has been so decided by the United States supreme court, and the doctrine has been recognized by this court. *Chicago, Burlington & Quincy Ry. Co. v. Iowa,* 94 U. S. 155. In our opinion, no facts or distinctions in principle exist which deprive the state of authority and power to establish "joint through rates," while it may, in the exercise of its constitutional authority, fix rates of freight charges for each separate railroad. When rates, not joint, are fixed, the maximum charges for specified distances, or per mile, are determined for each separate railroad, as shown by this illustration: Freight is shipped from Cedar Rapids to Davenport by the Burlington, Cedar Rapids & Northern and the Chicago, Rock Island & Pacific railroads. The rate of freight charges is fixed by the state from Cedar Rapids to West Liberty, and a separate rate from West Liberty to Davenport. Now, here are two separate rates,—a rate for each road. It is not doubted that the state may fix these rates, and when that is done the charges for through shipments from Cedar Rapids to Davenport is the sum of the separate rates. The state, in the exercise of its authority, in accord with legislative wisdom, may discover that these separate rates, when united, are too small to compensate the carrier, or too large to do justice to the shipper; that justice demands such modification of these separate charges that the sum thereof will be reasonable and just, both as to the railroad companies and the shippers. Thereupon the state, for "through shipments" over the two roads, fixes rates of charges for each road. The sum thereof, united, constitutes the lawful charge for freight between Cedar Rapids and Davenport. It clearly appears that the thing done in the one case is the same as in the other. It is simply the fixing of the rate to be charged by each road. No reason can be given why the state should not fix separate rates, which

should apply to the through shipments between stations of different roads. The authority which will authorize the fixing of rates for each road may be exercised, when there shall be through shipments over separate roads, to enlarge or restrict such separate rates, in order to attain the ends of justice. It will clearly be seen that the words, "through joint rates," simply mean rates which shall be just and reasonable charges for the transportation over the united route. As we have said, these united charges must be so apportioned to the separate roads that each shall receive a just and reasonable part of the joint charge. If the joint rate is fixed by the railroad companies, they will determine the part each shall receive. This will be done by the railroad commissioners, in case the railroad companies fail to fix joint rates ; and the commissioners will consider matters and circumstances which should affect the division. Acts, 23d Gen. Assem., ch. 17, sec. 4.

V.   The arranging of what is called "joint through rates" is not a thing that is new in the business of railroad transportation. The current history of the country discloses the existence of the practice among railroads to make through shipments of freight without change of cars. Nor is this practice of recent origin. It has existed whenever the business of the roads demanded it. Expedition and economy in transportation induced contracts and arrangements for through shipments between points on connecting roads. It may be that in some cases the managers of the roads refused or failed to enter into such arrangements or contracts, and it may be that in other cases the business of the roads has not been managed wholly in accord with the best interests of the corporations owning them, and with the requirements of the law. But such failure of duty does not establish the right to be exempt therefrom. Surely, the course of business which has been found, by experience of railroad management, to be promotive of economical transportation and increase of business, thereby promoting the interest of the owners of the railroads and the shippers, ought to be pursued ; and, if the railroad

management fail or refuse to pursue it, the state, as it has done in the statutes under consideration, ought to require it to be pursued. This the state can do under the authority it possesses to regulate and control carriers, and provide maximum freight charges.

It will be observed that section 3 of the statute above quoted, providing for joint through rates, contemplates the practice of through shipments, so long existing, and requires the railroad commissioners to consider the charges made for joint inter-state shipments and the rates charged by the railroad companies for shipments within the state. The purpose of the statute is to secure just and reasonable rates for the shippers of this state, and it directs that the practice and course of business of the railroads shall be considered in fixing such rates. It cannot be that the statute in question will operate to the denial of just compensation to the railroad corporations for the transportation of property. It provides that joint rates fixed under the statutes shall be reasonable. The railroad commissioners, it will be presumed, will rightly discharge their duties, and will fix reasonable and just "joint through rates." If these officers fail in their duty, from errors of judgment or from other causes, the railroads may cause their action to be reviewed and corrected.

VI. Objections to the statutes are urged in the following language: "We contend, therefore, that the law seeks to compel: *First*, that two or more companies shall enter involuntarily into contract relations with each other at the demand of a third person; *second*, that one company shall surrender its cars to the possession of another, or unload the contents without compensation; *third*, that, at the demand of a third person, companies shall not only part with the possession of their cars, with no provision in the law as to their return or compensation for their use, but shall accept cars of other companies, and carry the same over its lines without any provision for compensation."

1. RAILROADS: freight traffic: joint rates: power of state to establish.

The statements of facts in this position is not wholly correct. It is not correct that railroad companies are, under the statute, compelled to enter involuntarily into contract relations with each other. It is true that the statute requires them to enter into the contract for joint rates, thus imposing upon them the duty so to do; but it does not provide for enforcing the duty by proceedings recognizing a contract between the parties, if that, indeed, could be done; nor does it provide for penalties or forfeitures for failure to discharge the duty. It simply provides that, in case of failure to adopt joint rates by the companies, the railroad commissioners shall prescribe them, and the companies shall not be permitted to charge more. In that case, the charges are not made by the companies under a contract, but pursuant to a duty and obligation imposed by law. It is not necessary, in order to support an action against a railroad company for failure to fix joint rates, to hold that it is bound by an obligation as of a contract. Its liability arises by reason of its failure to perform a duty imposed by law. The statute, in its principle and its effect in this regard, is not different from other rules of the law applicable to common carriers, which hold them liable for failure to receive property for transportation. In both cases the carrier is liable for the non-performance of duty.

VII.   The course of business of railroad companies, originating in the wants and demands of commerce, requires the cars of one company to be 2. —:—:—: transfer of cars. delivered to another for transportation. It is presumed that rules relating to compensation for the cars transported are settled by agreement, or under rules recognized and prevailing in the business of transportation by railroads. At all events, the law provides rules under which this matter of compensation may be settled. It is competent for the railroad commissioners, if it be necessary, to impose rules touching this matter, in order to aid the railroad companies to perform the duty imposed by the statute to provide for joint rates, or to require or enforce the performance of that duty.

The fact that the transfer of cars from one company to another, for the transportation of property over more than one railroad, without breaking bulk, has been practiced so long as to be recognized as of the course of business, of which we will take judicial notice (*Peoria & P. U. Ry. Co. v. Railroad*, 109 Ill. 135), is a complete answer to the complaints made in the objections under consideration. Surely a course of business so long pursued, and so extensively prevailing, and demanded by the commerce of this country, cannot, when recognized and required by statute, become so objectionable in principle, so oppressive in operation, as to require the statute to be declared unconstitutional. A railroad company, as a common carrier, is required to receive and transport freight offered to it for transportation. The reasons upon which this rule is founded impose upon it the obligation to haul cars of other companies brought to it for transportation over its own road. *Peoria & P. U. Ry. Co. v. Railroad*, 109 Ill. 135. As the course of business of the railroad companies and the rules of law require them to transport the cars of other companies, surely a statute prescribing and enforcing the duty thus imposed cannot be regarded as interfering with the constitutional guaranties for the protection of the rights and property of such companies. The statute under consideration provides that freight in carload quantities may be transferred, instead of going through to destination without change of cars, the cost of unloading being paid by the company making it. Acts, 23d Gen. Assem., ch. 17, sec. 2. This provision is intended to excuse the duty to transfer cars upon payment of costs of unloading, and is enacted in the exercise of legislative authority, to regulate the performance of duty by carriers, and prescribe reasonable charges for the transportation of freight.

VIII. Counsel for the plaintiff maintain, upon many grounds, that the statutes in question are in conflict with both the state and federal constitutions. It is first urged that they impair the obligation of the contract arising under

the plaintiff's charter.   It has been held by the United States supreme court that railroad corporations are "subject to legislative control as to the rates of fare and freight, unless protected by their charters." *Chicago, B. & Q. Ry. Co. v. Iowa*, 94 U. S. 155.   This doctrine is recognized by this court.   The authority of the state to control rates of freight charges made by railroad companies is not restricted so that it cannot be exercised in fixing the rates to be charged by connecting roads, which are called in the statute "joint through rates."   Joint rates, as explained heretofore in this opinion, are simply the sum of separate rates of the respective roads.   The railroad commissioners in fixing joint rates, under authority of the state, may make just and reasonable orders for the return of cars and for compensation for their use, or for hauling them, and they will consider these matters in fixing the separate rates which together make the joint rate.   The constitutional objection in this point demands no further consideration.

IX.   It is urged by the plaintiff's counsel that the statute is in conflict with the fourteenth amendment of 4. —: —: —: the constitution of the United States, "in *due process of law*. that, without due process of law, and without just compensation, it takes away from the corporators funds invested by them upon certain specified trusts, and applies these funds to uses to which the owners never consented."   We understand this objection, in effect, to be this:   That by the statute the plaintiff or its stockholders are deprived of property without due process of law.   The power of the state is exercised through designated officers, the railroad commissioners, by proceedings specially provided to enforce the authority of the state.   They are designated by the Code special proceedings, in which rights may be established and remedies enforced, and are pursued in many cases.   Code, sec. 2504.   Railroad corporations acquire lands to be occupied by their roads by special proceedings.   Surely, the same character of proceedings may be invoked to enforce the performance by them of lawfully

imposed duty. The proceedings provide for notice to the railroad companies, and that they shall be heard in regard to the questions of joint rates. Acts, 23d Gen. Assem., ch. 17, sec. 4. It is a mistake to suppose that "due process of law" is found only in law or chancery actions. Special proceedings, applicable to specified subject-matter, and conformable to the rules requiring notice and the acquisition of jurisdiction, and which affect all persons alike, whose property or rights come within the lawful scope of the proceedings, are prosecuted with "due process of law." 6 Amer. & Eng. Ency. Law, tit. "Due process of law." The statutes are designed to prevent railroad corporations from charging unreasonable rates for the transportation of property. Surely, it cannot be claimed that they are deprived of property and property rights by restrictions against unreasonable charges.

In this connection counsel repeat objections founded upon what they term "enforced contractual relations" between the railroad companies. We have shown that these joint through rates are often agreed upon by the railroad companies. They determine, in the common course of business, the division of charges, and where and to whom they shall be paid. Under the statute in question, it is made the duty of the railroad companies to establish joint through rates. If they fail to perform the duty, the railroad commissioners will establish the rates as they should have done, and will do just as they should have done and could have done,—prescribe the time and place of payment, and the division of charges. There will be no more difficulty in obeying the requirements of the railroad commission than in performing their own agreements for joint through rates, entered into in the course of their business. It is plain that the rights of the plaintiff will not be invaded under this statute, and it will suffer no oppression.

X. It is argued that the statutes are void for the reason the railroad commissioners are not a judicial body, and ought not to be permitted to fix rates which shall be regarded as *prima*

5. The same.

*facie* reasonable, The question of the reason..bleness
·of the rates, it is argued, ought to be judicially deter-
mined ; and so it can be if the action of the commission
is not satisfactory to the railroad company. The pro-
vision of the statute that the rates fixed by the com-
missioners shall be regarded as *prima facie* reasonable
is not of an unusual character, and was enacted in the
·exercise of the undoubted power of the state to prescribe
rules of evidence in all proceedings under the laws of
the state. The law presumes the acts of officers of the
state to be rightly done, and gives them faith accord-
ingly. This rule is not unlike the provision of the
statute complained of by the plaintiff. The courts of
law and chancery are open to the railroad corporations
for proceedings to review the acts of the commis-
·sioners in fixing rates of charges.

    XI. It is urged that the statutes are in conflict with
·section 8, article 1, of the constitution of the United
States, in that it is an attempt to regulate
commerce between the states. The position
is based upon these alleged facts. The plain-
tiff's road, in its route between Burlington and Rock
Rapids, passes through a part of Minnesota. Trains
running between these cities would pass through
·another state, and, therefore, counsel conclude shipments
between these cities, on these trains, is inter-state com-
merce. We need not determine whether traffic between
·cities of the same state is merchandise, which, pursuant
to the traffic, is transferred from one city of the state to
·another, by a route partly in another state, by a rail-
way company organized under the laws of the state,
which carries the merchandise within the jurisdiction
·of the other state, is inter-state commerce. See, on this
·question, *Commonwealth v. Railroad*, 17 Atl. Rep. (Pa.)
179, and *State v. Railroad*, 41 N. W. Rep. (Minn.) 1047,
recognizing adverse rules, the first maintaining that
·such a transaction is not inter-state commerce. The
petition does not allege that defendants are about to fix
joint rates between Burlington and Rock Rapids. If it
.be not lawful for them to do so, we will presume, when

*8. ——: ——: ——:*
*inter-state*
*commerce.*

called on to act, they will not fix such a joint through rate. We would not annul a statute on the ground of a fear of its erroneous execution in one particular. Upon the question of law presented by counsel we intimate no opinion.

XII. Chapter 28, Acts of the Twenty-second General Assembly, provides that, when recovery is had for

7. ——: ——: ——:    its violation, attorney's fees are adjudged
attorney fees.    against the defendant. It is insisted that a privilege is here granted to a suitor which is withheld from other citizens. All citizens, having litigation of the character indicated, have equal rights to recover attorney's fees. The legislature may prescribe rules permitting recovery of double damages or attorney's fees in one class of cases, and deny it in all others. There is no inequality therein forbidden by the constitution and laws.

XIII. It is insisted that the provision imposes a "penalty for exercising the right of defense." It will be seen that, if the defense is established, there can be no penalty; if it be not, it will be rightly imposed.

XIV. It is urged that the statute is void for uncertainty, in that it does not define the offense for

8. ——: ——: ——:    which the penalties provided may be
statute: cer-    imposed. These offenses are explicitly
tainty as to
offenses    defined in chapter 28, Acts of the Twenty-
charged.    second General Assembly, sections 11, 23. It is said that the statute is uncertain, because it does not prescribe what shall constitute a reasonable rate. It declares that the rate ъxed by the commission shall be *prima facie* evidence that it is reasonable. But it permits the accused to show in defense that it is not reasonable. The law requires reasonable rates to be charged. What constitutes such rates is a question of fact to be determined under the rules of the law. But it is said that the commissioners' rate would not secure the accused from conviction if it be shown that the charges fixed by the commissioners are excessive,— greater than is reasonable. But the purpose of the provision authorizing the commission to fix rates is to

determine a maximum rate, beyond which the railroad company may not charge. It may charge the rate fixed, but no more. In prosecutions to recover penalties for the violation of the statute, the state is precluded from denying that the commissioners' rates are unreasonable.

XV. It is urged that the fines imposed by the statutes for its violation are excessive, and forbidden by section 17, article 1, of the state constitution. The fines are intended to enforce obedience to the law by corporations having great incomes and controlling vast properties. The legislature, in exercise of its wisdom, fixed penalties which, if imposed upon individuals, might appear excessive, but when imposed upon the corporations would be esteemed no greater than is necessary to enforce obedience to the statute. The railroad companies have a ready and efficient way of avoiding these severe penalties, namely, by obeying truly the laws of the state. If they do this, they are in no danger of the penalties; if they do not, they are in no condition to complain of the laws.

*9. —: —: penalty; excessive fine.*

XVI. It is insisted that the rates established under authority conferred by chapter 17, Acts of the Twenty-third General Assembly, are absolute, and, upon the questions of their justice and reasonableness, are final and conclusive. The third section confers such authority upon the railroad commissioners. It is insisted that this section fails to provide that the rates shall be only *prima facie* evidence that they are just and reasonable. It is claimed by counsel that the last sentence is unintelligible,—at least so uncertain as to be incapable of construction. It may be assumed for the purpose of the argument, that this position is correct. It is evident that this section is not wholly in the language used in its enactment by the general assembly ; the history of the law supports this conclusion. The act containing the provision is amendatory to chapter 28, Acts of the Twenty-second General Assembly, and confers authority to fix joint through rates, which was not done

*10. —: —: —: evidence.*

in the prior statute. That statute provides that the
rates fixed by the railroad commissioners shall be *prima
facie* evidence that they are just and reasonable. The
amendatory statute provides that in making joint rates,
and in changing and revising the same, the railroad com-
missioners shall be governed, as nearly as may be, by
all the provisions of the act to which it is amendatory,
and that the punishments and penalties provided in the
prior act shall be inflicted for the violation of the
amendatory act. See sections 1 and 5. No other pun-
ishments and penalties are prescribed. It will be
observed that section 5, in express language, declares.
that the punishments and penalties contemplated by the
act shall be inflicted for unjust and unreasonable
charges. The charges fixed by the railroad commis-
sioners are, under the statute, *prima facie* evidence of
their reasonableness. For the violation of the law in
charging more than reasonable joint rates as determined
by law, punishments and penalties are alone provided.
We conclude that, according to the obvious construc-
tion of the two statutes, read together, the joint rates
are not absolute, but are *prima facie* evidence only of
their reasonableness and justice. The construction of
the statute we have adopted gives it effect ; that
insisted upon by the plaintiff would defeat it. We are
required, under the familiar rules of the law, the statute
being susceptible of conflicting and doubtful construc-
tion, to adopt that one which supports the statute in
all its parts, and if the statute in some of its provisions.
be so indefinite, uncertain or unintelligible as to be
incapable of enforcement, or be void because of conflict
with the constitution, or for any other reason, we must
sustain the statute in all its parts which are not subject
to such objections.

XVII. Another familiar rule of the law requires
courts to uphold statutes unless they are so plainly and
palpably in conflict with the constitution as to leave no
doubt or hesitation in the judicial mind of their inva-
lidity. *Stewart v. Supervisors*, 30 Iowa, 9 ; *Railroad*

*v. Supervisors*, 67 Iowa, 199 ; *Gates v. Brooks*, 59 Iowa, 510 ; *Morrison v. Springer*, 15 Iowa, 304. It cannot be fairly claimed that the statutes in question are plainly and without a doubt unconstitutional.

XVIII. Counsel for the plaintiff insist that the order of the district court, in overruling the motion to dissolve the injunction, must be affirmed on this ground : The motion to dissolve admits the allegations of the petition. It is claimed one of these allegations is "that joint rates, as contemplated by the statute, would so reduce plaintiff's income as to render its business unremunerative." It is insisted that, upon this admission, it must be held that the statute in question would have the effect to deprive the plaintiff of its property. Without inquiry whether the effect of the statute upon the plaintiff's business, as claimed, would be ground of holding it involved, and enjoining its enforcement, we think the loss of plaintiff's property is not shown in the plaintiff's petition. The language of the petition upon which counsel base the position under consideration is this : "That by said acts your petitioner is denied the right and liberty of contracting with reference to its business, and, therefore, is its property taken from it without consent, and it is compelled to enter into involuntary, unreasonable and unprofitable contracts with other railroad companies, at the instance of third parties, compelling the operation of its road at a loss." What is averred here as to the deprivation of property, and the future operations of the road at a loss, are mere conclusions as to supposed effects. It does not amount to an allegation of facts. It is the mere statement of a conclusion that the road would be operated at a loss because plaintiff would be compelled by the statute to enter into involuntary, unreasonable and unprofitable contracts. The allegation in question is, indeed, a conclusion based upon another conclusion as to the supposed operations of the statute.

XIX. It is also insisted that, as the dissolving of an injunction is a matter resting largely in the

*Margin note:* 11. PLEADING: demurrer: facts admitted.

12. INJUNCTION: dissolution on motion: discretion of trial court.

discretion of the court, the refusal of the court below will not be disturbed unless it appears such discretion has been abused. But this rule does not apply to cases involving questions of law arising upon the face of the petition itself. If it appear upon the face of the pleadings that, as a matter of law, the injunction ought not to have been granted, it will be dissolved. Surely, the operations of a statute of a state will not be suspended by injunction for conflict with the constitution, under this doctrine of discretion, when the petition therefor, upon its face, shows that it is constitutional, or that it is not clearly and without doubt unconstitutional. The failure to dissolve the injunction, upon proper motion, was not done in the exercise of judicial discretion. The enforcement and obedience to the rules of law are not left to the discretion of the court.

XX. The views just expressed, and the rules upon which they are based, dispose of another position of

13. ——: ——: answer.

counsel, namely, that the injunction will not be dissolved on motion, because the facts alleged in the petition are not denied by answer, and that the relief sought will not be effectual if the injunction be not maintained. But there are no issues of fact raised by this motion,—they are all of law. The issues involve the validity of the statutes in question. If they be held valid, no facts are alleged in the petition which will defeat them.

XXI. Much is said in argument attacking the justice and policy of the statutes. With these things

14. STATUTES: public policy.

we have nothing to do. They are for the consideration of the legislative department of the government alone.

These views dispose of all questions arising in the case, and lead us to the conclusion that the judgment of the district court ought to be REVERSED.

ROTHROCK, J. (*dissenting*).—It appears to me that the foregoing opinion is unsound in its reasoning, and wrong in its conclusions, upon two questions

involved in the record in the case. These questions involve the validity of certain provisions found in chapter 17, Laws, Twenty-third General Assembly. I believe that parts of that act are plainly invalid, and ought not to be upheld by this court ; and it is proper to say here that the question as to the power of the legislature to authorize the railroad commissioners to establish and promulgate joint rates for the transportation of freight over connecting lines of railroad is not necessary to be determined in this case. The question is, does the said act, by reason of its plain language, violate the constitution of the United States, and of this state in so far as it compels a common carrier to perform service without compensation, or to surrender its property to another carrier, and thus deprive it of its property without due process of law?

The first question arises upon the second section of the act. It is therein provided that "carload lots shall be transferred without unloading from the cars in which such shipments were first made, unless such unloading in other cars shall be done without charge therefor to the shipper or receiver of said carload lots, and such transfer be made without unreasonable delay." This provision of the law is absolute. It seeks to compel the initial carrier to deliver its loaded cars to the connecting carrier without any rule or regulation for its return, and without its consent, or to unload the contents of the car into other cars without compensation. It is apparent that the initial carrier is compelled by the act to name to the shipper a joint through rate over all lines of road which the shipper may designate. The law attempts to compel the initial carrier, if the freight be paid in advance, to account to all other carriers for their proportion of the charges, or, if the freight be paid to the last carrier, it becomes the agent or collector for all the others. This enforces contractual relations against the will of the parties, and it is no answer to say that it is not in the nature of a contract, but that it is a rule or regulation prescribed by law. It partakes of the nature of a contract, by whatever

name it may be called ; and the fact, that carriers over connecting lines do, by contract, make through shipments, is no reason why they should not be allowed to make their own contracts at least so far as to protect themselves in the collection of their freight charges, and in the control of their cars. They should have this power, or the law should provide for such regulations as would protect them in their undoubted rights.

The second question is whether, by the act under consideration, the joint rates fixed by the commissioners are to be regarded as absolute. The last part of section 3 of the act is unintelligible. What is intended thereby cannot be determined without the interpolation of words, so as to give meaning to that which is absolutely unmeaning. I am not aware that any court has ever, under the guise of construction, entered upon the field of legislation to the extent required to hold that the act provides that the schedule of rates shall be *prima facie* evidence that the same are reasonable and just; and the attempt to find ground upon which to hold the act valid, by reference to the act of which it purported to be amendatory, it seems to me is equally unwarranted.

Without elaborating these questions, I conclude that no court ought to be called upon to uphold an act like this, which attempts to control the most important rights without the semblance of an effort to protect the parties affected thereby. In addition to the failure to make the third section intelligible, the second section requires that, if the initial carrier does not deem it prudent to deliver its car to the connecting line for any reason, such as that the car is required to transact its own business, or that it may have to institute legal proceedings to procure its return, the contents shall be unloaded "in other cars" without unreasonable delay. It is to be supposed that this means other cars, the property of the connecting line. It cannot discharge its obligation by unloading in a warehouse, if the connecting carrier neglects to furnish other cars. It appears to me that it will be time enough

to authorize the establishment of through rates when a law shall be passed making provision for the protection of the rights of property which are everywhere and at all times regarded as sacred, and of which the owner cannot be deprived even by legislative authority, without due process of law. In my opinion, the order and judgment of the district court should be AFFIRMED.

ROBINSON, J., concurs in this dissent.