JOHN W. BRADY v. GEORGE W. MATTERN, Appellant.

**Constitutional law:** BUILDING AND LOAN ASSOCIATIONS: POLICE POWER.
1  It is within the power of the legislature to limit the transactions of a building and loan association, by statutes intended to regulate the business, to incorporated associations; and such statutes are not unconstitutional because creating an unreasonable class distinction.

**Statutory regulation:** CONSTITUTIONALITY. The statutes requiring
2  incorporated building and loan associations to deposit with the auditor of the state securities in the sum of $50,000.00 as a condition precedent to commencement of business, authorizing the auditor to require an additional deposit, and the executive council to pass upon the plan and methods of the association, are not unconstitutional on the ground of unreasonable discrimination.

**Same.** The fact that the provisions of the building and loan statutes
3  make it impossible for some persons or associations to engage in the business, does not render them unconstitutional as creating a monopoly.

**Delegation of power:** CONSTITUTIONALITY. A statute authorizing the
4  executive council to pass upon the plan and method of a building

and loan association, or authorizing the auditor to fix the amount of securities to be deposited with the state, is not an unconstitutional delegation of power.

**Statutory impairment of contract.** Where a statute is found to impair the obligation of a contract, it may be held inoperative as to that particular contract, without holding it unconstitutional.

*Appeal from Polk District Court.*— Hon. A. H. McVey, Judge.

WEDNESDAY, JULY 13, 1904.

PROCEEDING by *habeas corpus* to secure the release of plaintiff from imprisonment under arrest for the crime of soliciting and securing an application for a building and loan contract in violation of chapter 77 (page 45), of the Laws of the Twenty-Ninth General Assembly, prohibiting agents from soliciting or transacting business for an unincorporated building and loan association which has not complied with the provisions of that statute. The judge of the district court to whom the application for discharge was made, upon a hearing, sustained such application, and the State appeals from the order of discharge.— *Reversed.*

*Chas. W. Mullan,* Attorney General, and *Lawrence De Graff,* Assistant Attorney General, for appellant.

*B. A. Younker,* for appellee.

McCLAIN, J.— The trial judge discharged the plaintiff from custody on the ground that the statute which he was charged with violating is unconstitutional, and that is the sole question argued. Without setting out in full the provisions of Acts Twenty-Ninth General Assembly, page 45, chapter 77, it is sufficient to say that it is made applicable to all unincorporated organizations, associations, societies, partnerships, or individuals conducting and carrying on a business corresponding, as described, to the business author-

ized to be carried on by incorporated building and loan associations, as provided and regulated in chapter 13, title 9, of the Code, and chapter 69, page 51, of the Acts of the Twenty-Eighth General Assembly, which statutory provisions are by the statute under consideration made to apply, so far as the same can be made applicable, to the unincorporated organizations, associations, partnerships, etc., to which the statute refers. The act, however, imposes a variety of conditions and restrictions on the transacting of such business by unincorporated organizations, associations, partnerships, etc., which are not imposed upon incorporated associations, among which are the conditions and requirements that the unincorporated organizations, associations, partnerships, etc., shall, before transacting any business, submit to the Executive Council of the State a sworn statement of resources and liabilities, and deposit with the Auditor of State at least $50,000 of negotiable notes, secured by first mortgages upon real estate in this State, bearing interest at a rate of not less than 5 per cent. per annum, and such further securities as the Auditor of State may require; the deposit to be for the protection of members of such organizations, to be held in trust for the purpose of fulfilling and carrying out their contracts with members and persons making periodical payments thereto. It is further provided that on approval of the Executive Council of the plan or method of business of any such unincorporated organization, association, etc., the Auditor of State shall issue a certificate authorizing it to transact business upon the deposit with him of the securities required; that the Auditor may at any time make an examination of the association, and may revoke its certificate of authority if it shall be found not to have complied with, or to have violated, any of the conditions imposed; and that any officer, agent, or employee of such association, or any person transacting the business thereof, shall be subject to fine in a sum not exceeding $10,000, or imprisonment in the penitentiary not exceeding ten years

for soliciting, transacting, or attempting to transact any business for any such association which has not procured and does not hold a certificate of authority from the Auditor of State to transact business in the State. It is conceded that the petitioner in this case had been soliciting applications and transacting business in this State for a co-partnership operating under the name of the Home Co-operative Company of Kansas City, having its principal place of business in Kansas City, Mo., and engaged in the kind of business described by the statute, without complying with the provision of such statute.

The appellee contends that the statute is unconstitutional, for the following reasons: (1) That it confers upon a class of citizens privileges and immunities which upon the same terms do not belong to all the citizens of the State, and is therefore class legislation, repugnant to section 6 of article 1 and section 30 of article 3 of the State Constitution, and to section 1 of amendment 14 to the Federal Constitution; (2) that the effect of the law is to prohibit individuals and unincorporated bodies from engaging in the building and loan business, which is permitted to corporations, and that it is therefore contrary to sections 1 and 9 of article 1 of the Constitution of Iowa, and to section 1 of amendment 14 to the Federal Constitution; (3) that the effect of the law is to confer a monopoly of the building and loan business upon corporations, thereby depriving individuals of the common-law right to make contracts, contrary to section 6 of article 1 and section 30 of article 3 of the Constitution of Iowa, and section 1 of amendment 14 to the Federal Constitution; (4) that the law delegates legislative functions to the Auditor of State and to the Executive Council, and thereby violates section 1 of article 3 of the State Constitution; (5) that the law impairs the obligation of existing contracts, in violation of the Federal and State Constitutions. It will be convenient, however, to discuss the questions in-

volved in the case, as we understand them, in a somewhat different order.

I.   It is contended for the appellee that the statute, in effect, prohibits unincorporated associations, partnerships, and individuals from carrying on the business which is permitted to corporations known as " building and loan associations." Prior to the passage of this statute the business of such corporations was regulated by statute, but there was no regulation of such business as conducted by individuals not incorporated; and, under the claim that the statutory regulations now applied to the latter are prohibitory, it is claimed that the statute is unconstitutional, as interfering with the right of individuals to contract and to engage in lawful business.

1. BUILDING AND LOAN ASSOCIATIONS: police power.

It will not be necessary to quote the provisions of the State Constitution and the fourteenth amendment to the Federal Constitution relied on to support this contention. They are the usual provisions under which it is held that individuals are guarantied the right to acquire and own property, to make contracts, and to engage in business enterprises, so long as the public welfare is not infringed.   Nor is it necessary, on the other hand, to cite the cases in which it has been held that an act of the Legislature will not be declared unconstitutional unless in plain violation of some provision of the constitution, and that the courts will not interfere with the discretion of the Legislature in its exercise of the power to provide for the public welfare so long as it keeps within the fair and reasonable scope of its powers. That the Legislature may, in the exercise of the police power, regulate and control the carrying on of business which may be injurious to the public if not properly conducted, or may prohibit a business which is essentially injurious to the public, cannot be questioned.   The concrete question here involved is whether the Legislature may prohibit one class, composed of unincorporated associations, partnerships, and individuals, from conducting the loan and building associ-

ation business, which is permitted to another class, composed of artificial persons or corporations. It is to be noticed that there is no attempt to absolutely prohibit the carrying on of such business, and the cases involving the constitutional right to engage in a form of business activity not injurious to the public are not in point. The question is as to the right to discriminate between classes by way of regulation of the business. That such discrimination may be made, when based on a reasonable distinction, involving the public welfare, cannot be questioned; and if the distinction between classes is reasonable, and not purely artificial, and the statute is applicable to all who come within the limits of the classification, its constitutionality cannot be questioned.

Now, that there is some authority for making such discrimination has been recognized as to similar forms of business. The building and loan association business is to some extent analogous to the banking business, and, with reference to the latter, statutes limiting it to incorporated associations have been upheld. Thus in *State ex rel.* v. *Woodmansee,* 1 N. D. 246 (46 N. W. Rep. 970, 11 L. R. A. 420), it is decided that the prohibition of private banks — that is, banks not operated by corporations as authorized by the laws of the State — is not unconstitutional. The court supports the conclusion reached by quoting as follows from Morse on Banking (2d Ed.) page 1: "At common law the right of banking pertains equally to every member of the community. Its free exercise can be restricted only by legislative enactment, but that it legally can be thus restricted has never been questioned. After laws upon the subject have been passed, the business must be undertaken and conducted in strict accordance with all the provisions contained in them. It is not in its nature a corporate franchise, though it may be made such by legislation, and individuals may be prohibited from transacting it, either altogether in all its departments, or partially in any specified ones." In *State v. Scougal,* 3 S. D. 55 (51 N. W. Rep. 858, 15 L. R. A. 477,

44 Am. St. Rep. 756), the court reaches a contrary conclusion on the identical question involved in the North Dakota case, and disapproves of that case, and the language quoted from Morse by which it is supported. The business of insurance is in some respects analogous to the building and loan business, and with reference to that it has been held by a divided court in *Commonwealth v. Vrooman*, 164 Pa. 306 (30 Atl. Rep. 217, 25 L. R. A. 250, 44 Am. St. Rep. 603), that a statute confining such business to corporations is not unconstitutional. Such a statute, it is observed in that case, " does not prohibit the business of insurance, but regulates it. It says to all persons interested: ' If you wish to embark in this business, you must secure a charter of incorporation, so as to subject your business to the visitorial power of the State. If you will not do this, you must not engage in insurance against fire at all.' This is not prohibition of the business for the business is distinctly authorized. It is an effort to bring it under State supervision and control, by requiring all who wish to enter the business to put themselves in a position where the insurance legislation of the State will reach them, and the Insurance Department of the State can supervise their business and compel observance of the law."

In view of this conflict in the authorities as to whether the Legislature may require that such forms of business as banking and insurance be carried on only by corporations, we may well consider whether such a discrimination is reasonable. As is said in *Commonwealth v. Vrooman, supra,* with reference to the business of insurance:

Corporations derive their existence from the State, and hold their franchises subject to legislative control. They are subject to the visitorial power of the commonwealth, and they may be, and are in fact, required to lay open before the several departments of State government and before the public the character and extent of their business, the profits realized, the dividends declared, and the investments made.     *     *     *

Private individuals are not subject to the same visitorial power. They cannot ordinarily be compelled to disclose their business, their financial conditions, or the character of their investments. They cannot be restricted in the use of either their capital or their profits, as corporations may be. Those who deal with them must trust more' to their personal integrity than the common experience shows to be safe. The State may compel a fair measure of fidelity in the management of these vast sums, and provide for the safety of the insured when, and only when, the business is in the hands of corporations.

This language is peculiarly applicable to building and loan associations. If the association is incorporated, the member, as a stockholder, can ask protection in the courts as against a perversion of funds, the safe management of which is essential to enable the association to carry out, in good faith, its obligations; but what protection does the individual investor have, as against a partnership or person to whom he pays money under such a contract, save the individual responsibility of the other party to the contract? If the statute which we are now considering is not valid, then such investor has practically no remedy, except an action at law for breach of contract, if the funds to which he has contributed may have been squandered or put beyond his reach. It is hardly necessary to now enter into any discussion of the right and duty of the Legislature to regulate the various businesses conducted by banking, insurance, and building and loan associations. Such right and duty have been recognized by legislation in practically all of the States in the Union, and conceding as we must, that such legislation is valid — that is, that these various forms of business may properly be regulated by the Legislature in the exercise of the police power — we reach the conclusion that it is within the power of a Legislature, if, in the exercise of its discretion, it sees fit to so enact, to limit such business to incorporated associations.

II.    But it is not necessary to the full disposition of the case before us that we go to the extent indicated in the

preceding division of the opinion in support of the statute.
It does not prohibit, either expressly or in
effect, the conducting of the building and loan
business by unincorporated associations, part-
nerships, and individuals.   It imposes conditions upon the
latter which are not imposed on corporations engaged in the
same business, but, unless the distinction made is unreason-
able, it is not to be condemned as class legislation; and the
reasonableness of the distinctions made becomes, therefore,
a necessary matter of inquiry.   No serious objection is made
to the provisions of the statute which subject unincorporated
associations, partnerships, and individuals conducting the
building and loan business to substantially the same super-
vision as that exercised over incorporated associations; but
it is objected that the provision requiring the deposit with
the Auditor of State of securities representing $50,000, and
further requirements that the Executive Council must ap-
prove the plan or method of doing business before the certifi-
cate may be issued, and that the certificate may be revoked
on failure to deposit with the Auditor of State such further
amount of securities as " in his judgment may thereafter be
necessary " to protect the members of such unincorporated
associations, or the persons making periodical payments to
partnerships or individuals carrying on such business, are
unreasonable, and constitute an unlawful discrimination, as
against such unincorporated associations, partnerships, and
individuals.   Bearing in mind the distinction indicated in
the preceding paragraph between power of control which the
State and the members of a corporation, respectively, may
exercise over corporate action, and that which may be ex-
ercised over individual action, it is by no means clear that,
in any view, the requirements of the statute are unreason-
able or oppressive, and we are satisfied that they are not so
unreasonable and oppressive and impossible of observance
that we can make them the justification for holding the
statute unconstitutional.

2. STATUTORY
REGULATION:
constitution-
ality.

Taking this case for an illustration, we find that the articles of the Home Co-operative Company provide that the person dealing with such company, with a view of taking advantage of the opportunity offered him for procuring a home, is to pay a membership fee of $3, and $1.35 each month, $1 of which is to go to his credit, until he has thus to his credit the sum of $50, after which time he may be entitled to have an installment in the sum of $50 per month applied on the payment for a home until the sum of $1,000 shall in this manner be paid. Until the expiration of fifty months, therefore, from the inception of the contract, the association will simply be his creditor for moneys paid in; and, if the association should start with no more than one thousand members, it would have received $50,000 from those numbers, without regard to membership fees, reserve funds, or expenses, for which the members would have absolutely no security save that of the liability of the association. Is it unreasonable, then, to require that securities to the extent of $50,000 shall be deposited with the Auditor of State before the association shall ask to be allowed to solicit members on these terms? It is said that there is no provision by which these securities can be withdrawn, or the interest accruing thereon returned to the association; but, no doubt, the Auditor of State would be authorized, under the statute, to release some of the securities, and accept others as a substitute; and if the association should continue to enlarge its membership, as it must do if it is to render its contracts profitable to its members, we are by no means satisfied that the aggregate of the securities, and the increase thereon, which must be in the Auditor's custody, will exceed the amount of security which the company ought to give for the faithful discharge of its contracts to members in this State.

Nor is the authority given to the Executive Council to pass upon the plan and methods of the association, and to the Auditor of State to require additional securities, open to the reasonable objection of unfairness. Conceding, as we

must, that the Legislature may dictate the plans and methods upon which the business may be conducted, there is no inherent impropriety in prescribing such plans and methods. Nor is it inherently objectionable that additional securities be required, to correspond to the extent of the business which the association is transacting. It might well be that $50,000 in securities would be an inadequate guaranty if the business should become extensive.

We reach the conclusion that we would not be justified in holding this statute unconstitutional on the ground that it makes an unreasonable discrimination. Without attempting to cite or exhaustively discuss the cases to which our attention has been called, we deem it sufficient to refer to the following in support of our conclusion that the statute is not unconstitutional on the ground that it amounts to class legislation: *Hawthorn v. People,* 109 Ill. 302; *State v. Moore,* 104 N. C. 714 (10 S. E. Rep. 143, 17 Am. St. Rep. 696); *Barbier v. Connolly,* 113 U. S. 27 (5 Sup. Ct. Rep. 357, 28 L. Ed. 923); *Gano v. Minneapolis & St. L. R. Co.,* 114 Iowa, 713; *State v. Stone,* 118 Mo. 388 (24 S. W. Rep. 164, 25 L. R. A. 243, 40 Am. St. Rep. 388).

III. What has been already said disposes of the claim made by counsel for appellee that the statute is unconstitutional as conferring a monopoly. The fact that conditions are imposed on a business which is subject to legislative control, such as to make it impossible for some persons or associations to engage in it, is not objectionable, as creating a monopoly in those who are able to comply with the conditions. If the restrictions are reasonable, the fact that some persons are not able to comply with them is no argument against the validity of the statute. This conclusion seems to be sufficiently established by the statement, without the citation of cases. No authorities are cited supporting the proposition that a reasonable restriction upon forms of business which the Legislature may, in the exercise of the police power, impose upon classes of business, is ob-

3. SAME.

jectionable on this ground. Even if unincorporated associations and individuals were prohibited from engaging in the building and loan business, so long as the business was open to all corporations complying with the reasonable conditions imposed by statute, no monoply would be created.

IV.   It is further contended, however, that the statute is open to the objection that it improperly confers legislative power upon the Executive Council and the Auditor of State.

4. DELEGATION OF POWER: constitutionality.

Here, again, we find no authorities which hold that the Legislature cannot give to executive officers a discretion in determining the conditions to be imposed on the conduct of a business which is subject to legislative control. The Legislature can only pass general statutes. It cannot provide for their application to particular conditions. Discretion may be conferred upon a railroad commission to fix rates of fare or freight. *Georgia Railroad v. Smith,* 70 Ga. 694. The board of supervisors of a county may be given the authority to fix the fees or compensation of officers. *Ryan v. Outagamie County,* 80 Wis. 336 (50 N. W. Rep. 340). We see no reason why the Legislature cannot authorize the Executive Council to determine whether the plan and methods in accordance with which the building and loan business is to be conducted by any particular association are fair, reasonable, and in accordance with public policy, or why the State Auditor cannot be authorized to fix the amount of securities which an unincorporated association desiring to conduct such business in the State shall deposit for the security of its members. It must be assumed that State officers will act fairly and impartially and in accordance with their best judgment, and statutory provisions allowing them to exercise a discretion in such action are not to be condemned as unconstitutional. *Burlington, C. R. & N. R. Co. v. Dey,* 82 Iowa, 312.

V.   As to the contention that the statute in question impairs the obligation of contracts, it is enough to say that

counsel does not point out any instance in which any valid contract will be impaired by the statute. If, in its application, the statute is found to have such an effect, it may be declared inoperative as to that contract without holding it to be in other respects unconstitutional.

5. STATUTORY
IMPAIRMENT
OF CONTRACT.

We reach the conclusion, therefore, that the statute in question is not unconstitutional on any of the grounds of objection urged to it, and that the plaintiff should have been retained in custody to answer for any violation of its provisions which may be proven on a proper trial; and the order of the lower court releasing him from custody is *reversed*.