JOSEPH E. YOUNG, appellant, v. JAMES O'KEEFE et al. (members
of the Board of Trustees of the Policemen's Pension
Funds of Sioux City), appellees.

No. 48696.

(Reported in 69 N.W.2d 534)

April 5, 1955.

Rehearing Denied June 10, 1955.

Brown & Nordenson, of Sioux City, for appellant.

George W. Davis and Tom E. Murray, both of Sioux City, for appellees.

Smith, J.—Plaintiff, a member of the Sioux City police force, and Edith Jipp were married May 25, 1940. She was then, and had been since September 1, 1924, police matron of Sioux City. She retired September 3, 1946, and died May 13, 1953, having qualified under civil service in 1933, and having received a policeman's pension from the date of .her retirement until her death.

Her contributions to the Pension fund commenced January 1, 1940. Prior to that date the Pension Board had refused to accept them or to enroll her as a "member" (as defined in Code section 411.1, subsection 4) until compelled to do so by district court decree entered December 6, 1939,. in a suit instituted by her.

On July 19, 1953, after his wife's death, plaintiff applied to defendant Board for survivor's benefits. His application was denied October 13, 1953. He thereupon brought this proceed-

ing to review the Board's denial and now appeals from the district court's decision against him.

The facts are stipulated and we have here the narrow legal question: Has the widower of a deceased female member the same survivor's right to benefits as is given the widow of a deceased male member under either section 410.10(1) or section 411.6(13a) of Iowa Code, 1950? (All reference to Code sections are to Code of 1950, now 1954, unless otherwise specified.)

■ I. Code chapter 410 (formerly chapter 322, Code of 1939 and preceding Codes back to 1924) requires "all cities having an organized police department" to levy a tax for the purpose of creating policemen's pension funds. The chapter is editorially headed "DISABLED AND RETIRED FIREMEN AND POLICEMEN." (We omit language pertaining only to firemen.)

The statute requires every department member to pay into the fund a "membership fee" and also to "be assessed" annually one per cent upon his annual salary. Code section 410.5 (section 6314 in earlier Codes). Any member of the department, having served twenty-two years and attained the age of fifty years, or who while a member becomes disabled from discharging his duties, is entitled to be retired and to be paid a monthly pension equal to one half his monthly salary at date of retirement. There are other details not important here. Code section 410.6.

Code section 410.10(1) specifies that "upon the death of any acting or retired member of such departments," his surviving *widow,* "so long as she remains unmarried and of good moral character," shall receive fifty dollars per month. There is provision for other dependents if there be no "surviving widow." The chapter contains no specific similar provision for surviving "widowers", nor any statutory definition of the word "widow", broadening it to include "widower."

Section 410.10 does say however, in a later unnumbered paragraph, *"the benefits provided by this section shall be subject to the following definitions: The term 'widow' shall mean only such surviving spouse of a marriage contracted prior to retirement of a deceased member from active service, or of a marriage*

*of a retired member contracted prior to the date this act takes effect.*" This language which we have italicized was added by Acts 45th General Assembly, Extra Session (1933-34), chapter 75, section 17. The amendment took effect March 1, 1934.

Plaintiff argues this "definition" broadens the word "widow" to make it include "widower" because it says " 'widow' shall mean * * * *surviving spouse* * * *." He would read it: "The term 'widow' shall mean *any* surviving spouse of a marriage contracted * * *." The argument ignores the significance of the word "such" which means "of the same class or category." Here it modifies the term "surviving spouse" and clearly relates back limiting the term "surviving spouse" to the category or class represented by the preceding word "widow." See Baird v. Johnston, 230 Iowa 161, 297 N.W. 315.

The entire definition was, in fact, a limitation upon the class entitled to survivor's benefits: The term "widow" shall mean *only* such surviving spouse (i.e., a widow) who meets certain specifications, viz., she must be the survivor of a marriage contracted prior to the retirement of her husband; or of one contracted prior to the effective date of the statute.

Had the legislature so intended, it would have been easy and natural to have provided, simply and clearly, that the word "widow" shall include "widower." Certainly that is not the meaning expressed here.

II. That same chapter 75 of the Laws of the Forty-fifth General Assembly, Extra Session, which enacted the amendment we have just discussed to the former Code chapter 322, now known as chapter 410, also created new and somewhat parallel, but much more detailed, "retirement systems for policemen and firemen appointed as such after this act takes effect" (March 1, 1934) in cities in which the department members are appointed under civil service. (Code section 411.2) That part of the Act is Division I (now Code chapter 411) while Division II amends various sections of the earlier statute (now chapter 410), among them the one we have already referred to which is now a part of section 410.10.

We have heretofore, for convenience, referred to chapter 410 as a "pension statute" and chapter 411 as a "retirement stat-

ute." See Rockenfield v. Kuhl, 242 Iowa 213, 215, 46 N.W.2d 17. Any possible distinction of that kind is not important here. The principal difference in the two chapters seems to be in the class of cities affected. (Compare sections 410.1 and 411.2.)

Chapter 411 begins with a long list of definitions. Subsection 10 of section 411.1 provides: " 'Widow' shall mean only such surviving spouse of a marriage consummated prior to retirement of a deceased member from active service." Its language, practically identical with that already quoted from section 410.10, is subject to the same frailty so far as concerns plaintiff's contention. Its effect is to limit the class of widows to survivors of "a marriage consummated prior to retirement" of the deceased member. It does not say the term "widow" shall be, or may be treated as being, synonymous with "surviving spouse."

 III. This same list of definitions provides (subsection 5): " 'He', 'his', and all other terms in the masculine gender shall be considered to include the feminine gender." Similarly, general definitions Code section 4.1, subsection 3, provides that in the construction of statutes "* * * words importing the masculine gender only may be extended to females."

Nowhere however do we find any statute or authority permitting substitution of the *masculine* for the *feminine*. Defendants say there is no such authority and plaintiff cites none.

Of course common-law and dictionary definitions must yield when the legislature, by express enactment, defines its own terms. Muscatine City Water Works v. Duge, 232 Iowa 1076, 1082, 7 N.W.2d 203; 82 C. J. S., Statutes, section 315; 50 Am. Jur., Statutes, sections 261, 262, 263.

██ ██ Certainly, as has been aptly said, a legislative body may be "its own lexicographer." But when it assumes the role of lexicographer we must treat it as one. We must read its language literally, especially when it redefines a word that already has a definite, fixed and unambiguous meaning.

We are required here to interpret, not the language of the main pension provisions, but what purports to be the legislative definition of that language.

 "Construction provisions" and "definitions" may doubtless sometimes be themselves subject to judicial construction.

82 C. J. S., Statutes, section 315, page 539, note 64. But before a definition is construed so as to expand the meaning of a well-known word to include its antonym or correlative, the intention of the legislature to that effect must be clear.

In Chretien v. Amoskeag Mfg. Co., 87 N. H. 378, 379, 180 A. 254, 255 (a Workmen's Compensation case), it was said: "A statute requiring that words denoting the masculine gender shall include females 'will not authorize us to read the word widow as including widower.' Rourke v. Russell, 91 Conn. 76, 78, 98 A. 718."

The cited Connecticut case involved (and denied) the claimed right of a widower of a decedent to an allowance out of her estate, under a statute providing for a *widow's* allowance. (It may be significant that such claim by a widower seems never to have arisen under our widow's allowance statute, notwithstanding Code section 4.1, and its predecessors in earlier Codes permitting words importing the masculine gender to be broadened to include females.) See in this connection In re Bowen's Estate, 95 Wash. 82, 163 P. 379, 380; Stuart v. Schoonover, 104 Okla. 28, 229 P. 812, 813.

There do not seem to be many cases in point. The opinion in Gottlieb v. North Jersey St. Ry. Co., 72 N. J. L. 480, 63 A. 339, held that a statutory right of action of a widow for wrongful death of her husband did not inure to a widower for the wrongful killing of his wife. See also Whittlesey v. City of Seattle, 94 Wash. 645, 163 P. 193, L. R. A. 1917D 1084; The Appeal of Rourke, 91 Conn. 76, 98 A. 718; Western Union Telegraph Co. v. McGill, 8 Cir., Kan., 57 F. 699, 21 L. R. A. 818. In Snyder's Estate v. Denit, 195 Md. 81, 91, 72 A.2d 757, 761, 18 A. L. R.2d 663, 670, a will construction case, it is said: "It is perhaps an anachronism in this age to hold that the masculine includes all genders (Code Article 1, section 7), but that the feminine does not. That, however, is clearly true in the construction of statutes."

In 50 Am. Jur., Statutes, section 262, the text writer says: "Moreover, the courts should not enlarge statutory definitions so as to include a situation or a condition which, it

might be assumed, the legislature would have covered by an enlarged definition if its existence had been contemplated", citing Lenox Realty Co. v. Hackett, 122 Conn. 143, 187 A. 895, 107 A. L. R. 1306. The citation supports the text though the facts are not analogous to those here.

The doctrine, however, is pertinent here. It is of course possible the members of the Forty-fifth General Assembly, had it been called to their attention, might have made the same provision for surviving widowers of deceased female members as was made for widows of deceased male members.

But it is at least equally plausible that the legislature, as defendants suggest, deliberately omitted doing so, considering financial dependency (as typified by the wife and children rather than by the husband and father) to be the "primary and essential" qualification to entitle a survivor to benefits.

It must be conceded there have been changes in family relationships and financing even since the time of the Forty-fifth General Assembly. There is now less dependency—or rather greater mutual dependency. The husband and father is not so commonly the *sole* breadwinner.

Plaintiff argues "the legislature must be assumed or presumed to know the meaning of words, to have used the words of a statute advisedly, and to have expressed its intention by the use of the words found in the statute." He cites 50 Am. Jur., Statutes, section 227, page 212, notes 10 to 13; In re Guardianship of Wiley, 239 Iowa 1225, 34 N.W.2d 593, 596.

The proposition is of course sound. It points, what has been frequently said in various ways, that when we say we are seeking the intent of the legislature we are in fact seeking its intent *only as expressed by its language*. We cannot ascribe to it an assumed or imagined intention or purpose not so expressed, nor can we substitute for its express intention one we deem more desirable or appropriate to changed conditions.

We are abidingly convinced that neither the language of the pension and retirement survivor statutes, nor the general-definition provisions of the Code, would justify a reversal here. If changed conditions, or considerations ignored or overlooked when the legislation was passed, suggest the desirability of an enlarge‹

ment of the class entitled to survivor benefits, that is matter for the legislative and not the judicial branch of our state government.

The decision of the trial court is—Affirmed.

WENNERSTRUM, C. J., and GARFIELD, BLISS, MULRONEY, HAYS, THOMPSON, and LARSON, JJ., concur.