ELK RUN TELEPHONE COMPANY, William R. Smith, George H. Smith, Albert Smith, Harlyn Morrow, and Duane Schumacker, Appellees,

v.

GENERAL TELEPHONE COMPANY OF IOWA, Hawkeye State Telephone Company and Mutual Telephone Company of Auburn, Iowa, Defendants,

Iowa State Commerce Commission, Appellant.

No. 52973.

Supreme Court of Iowa.

July 18, 1968.

Leo J. Steffen, Jr., Commerce Counsel, and Daniel J. Fay and Susan Thomas, Asst. Commerce Counsel, Des Moines, for appellant.

Bernard L. Willis, Lake City, for appellees.

Eaton & Eaton, Sidney, and Swanson & Swanson, Lake City, for General Telephone Co. of Iowa.

Thoma, Schoenthal, Davis, Hockenberg & Wine, Des Moines, for Hawkeye State Telephone Co. and Mutual Telephone Co. of Auburn, Iowa.

LeGRAND, Justice.

This interlocutory appeal from an order overruling motion to dismiss plaintiffs' petition presents for the first time questions involving an interpretation of chapter 490A, Code of Iowa, 1966, which was enacted by the 60th G.A. and became effective July 4, 1963. By its provisions the Iowa Commerce Commission was authorized to regulate the rates and services of public utilities "to the extent and in the manner" there set out.

Briefly the facts are these. Plaintiff, Elk Run Telephone Company, is a mutual telephone company consisting of 14 subscribers, most of whom desire telephone service from General Telephone Company of Iowa, one of the defendants. They requested such service and Elk Run Telephone Company consented to the proposed change. The petition alleges such request was wilfully, arbitrarily and wrongfully refused.

The five individual plaintiffs are subscribers of Mutual Telephone Company of Auburn, Iowa, one of the other defendants. These individuals, too, desire service from General Telephone Company of Iowa, which they assert was wilfully, arbitrarily and wrongfully refused. The Hawkeye Mutual Telephone Company was made a defendant because of alleged verbal and written agreements with General Telephone Company of Iowa concerning territorial rights, which agreements are said to be contrary to public policy and to violate plaintiffs' constitutional rights. The petition asks relief against General Telephone Company of Iowa only.

The Iowa Commerce Commission sought and received permission to intervene and is the appellant here.

After plaintiffs' request for service had been refused, application was filed on May 22, 1967, by all plaintiffs with the Iowa Commerce Commission under section 490A.-3, Code asking the Commission to require the defendant, General Telephone Company, to extend such service to them. On June 17, 1967, while this application was pending and before any action thereon had been taken as provided in chapter 490A, plaintiffs filed their petition in the Calhoun district court asking that General Telephone Company of Iowa be required to extend service to them, the same relief they sought in their application filed with the Commission.

Motions to dismiss this petition were filed by all the defendants and were joined in by Iowa Commerce Commission as intervenor. The real, but not the only, issue raised is the claim that chapter 490A, Code of Iowa, 1966, "vests jurisdiction of the matters raised by plaintiffs' petition in the Iowa State Commerce Commission and provides an administrative procedure for the filing, processing and determination of complaints relating to rates and services of utilities subject to its provisions and for appeal from orders of the Commission by persons aggrieved thereby to the district and supreme courts. That the remedies and procedure provided by this chapter, which are exclusive, have not yet been exhausted and as a result this court is without jurisdiction to adjudicate the matters raised in the petition.

"That there is now pending before the Iowa State Commerce Commission a complaint of the plaintiffs invoking the jurisdiction of that agency with respect to matters constituting the basis of the petition."

The trial court overruled the motion to dismiss and we permitted the Iowa Commerce Commission to appeal from that ruling under rule 332, Rules of Civil Procedure.

The order appealed from raises three principal questions which we must answer:

(1) Does chapter 490A give the Iowa Commerce Commission authority to compel a public utility to extend its service to new customers or to customers already being served by another utility?

(2) Is the jurisdiction of the Commission exclusive until such time as it has made a determination of matters properly submitted to it?

(3) Does chapter 490A set out adequate guidelines and standards to constitute a proper delegation of legislative authority?

I. The trial court found that chapter 490A did not authorize the Commission to order the extension of service to new customers and that it would be "useless and a waste of time" to compel plaintiffs to exhaust their administrative remedy since the Commission could grant no relief to them. The trial court specifically found the chapter required the utility only to furnish reasonably adequate service to. the customers already being served by it. We must disagree with this narrow construction placed upon the law under examination.

Section 490A.1 provides in part as follows, "The Iowa State Commerce Commission shall regulate the rates and services of public utilities to the extent and in the manner hereinafter provided.

"As used in this chapter, 'public utility' shall include any person, partnership, business association or corporation, domestic or foreign, owning or operating any facilities for:

(1) *    *    *    *    *    *

(2) furnishing communications services to the public for compensation;

(3) *    *    *    *    *    * "

Under this definition the plaintiff, Elk Run Telephone Company, and the defendants, General Telephone Company of Iowa, Hawkeye State Telephone Company and Mutual Telephone Company of Auburn, Iowa, all qualify as public utilities furnishing communications services to the public for compensation.

We mention parenthetically this litigation is concerned only with the regulation of services and not with rate-fixing. Mutual telephone companies in which at least 50 percent of the users are owners, or which have less than 2000 customers are exempt from the rate regulation provided for in chapter 490A, but all such utilities, regardless of size, are within its provisions as to regulation of services.

Since the chapter in question contains no definition of the rights, duties or obligations of a public utility, we must look to the common law for this information. A public utility has the duty to give the public reasonable and adequate service at reasonable rates without delay. It is obligated to furnish its service or commodity to the general public or that part of the public which it has undertaken to serve, without arbitrary discrimination. A public utility which neglects and refuses to perform this duty may be compelled to do so. 43 Am.Jur., Public Utilities and Services, section 22, page 586, section 33, page 594; 73 C.J.S., Public Utilities, § 7, pages 998–999; Phelan v. Boone Gas Company, 147 Iowa 626, 628, 125 N.W. 208, 209, 31 L.R.A., N.S., 319. This obligation to perform under the terms of its franchise includes the rendering of service to those entitled thereto within the franchise area even though they have not theretofore received such service. In 73 C.J.S. Public Utilities § 7, page 998, we find this statement, "In a proper case a public utility may be ordered to extend its service, although the immediate result of the extension may entail financial loss. While a public utility may be required to serve every applicant within the territory it professes to serve, it cannot be required to extend service outside such territory." There is no suggestion in the instant case that those who seek service are outside the franchise area served by General Telephone

# 315

Company of Iowa. For other authority to this same effect see 43 Am.Jur., Public Utilities and Services, sections 47–48, pages 601–602; Philadelphia Rural Transit Company v. Public Service Commission, 103 Pa.Super. 256, 158 A. 589; Ohio Central Telephone Corp. v. Public Utilities Commission, 166 Ohio St. 180, 140 N.E.2d 782, 784; California Water and Telephone Company v. Public Utilities Commission, 51 Cal.2d 478, 334 P.2d 887.

We cannot believe the legislature intended to limit the authority of the Commerce Commission to fix rates or to enforce rules to those instances in which the parties involved were already customers of the public utility. The duty of a public utility is much broader than that. It has an obligation not only to those it is already serving but to those who are entitled to service upon proper demand. According to Webster's New International Dictionary, Second Ed., regulate means "to govern or direct according to rule; to bring under the control of law." Some of the synonyms given for regulate are "direct, rule, govern, control."

■ We hold a reasonable interpretation of chapter 490A leads to the conclusion that the Commerce Commission has authority not only to regulate service actually being rendered by the public utility, but to compel it to give that service which it is by law obligated to render. In this connection we call attention to the statement in section 490A.2 conferring on the Commission "broad general powers to effect the purposes of this chapter notwithstanding the fact that certain specific powers are hereinafter set forth." We do not hold, of course, that plaintiffs are entitled to the service which they demand. We merely say this is a matter to be properly determined in the first instance by the Commerce Commission.

■ II. This brings us to the next question raised by this appeal. If the Iowa Commerce Commission has jurisdiction, is that jurisdiction exclusive? We hold it is. 73 C.J.S. Public Administrative Bodies and Procedure § 40, page 347; Call Bond and

Mortgage Company v. City of Sioux City, 219 Iowa 572, 584, 259 N.W. 33; Minnesota Valley Canning Company v. Rehnblom, 242 Iowa 1112, 1116, 49 N.W.2d 553, 555. Virtually all authorities hold when authority is delegated to an administrative officer or body, such delegation within its terms and limitations is primary and exclusive unless a contrary intent is clearly manifested by the legislature. A careful reading of chapter 490A fails to disclose any such contrary intent. Rather the provisions for appeal, first to the district court and then to this court, make it apparent the legislature intended the administrative remedy before the Commerce Commission should be first exhausted before resort could be had to the courts. Until the Commission has made its finding and has entered its order so that an appeal may be taken to the district court as provided in section 490A.13, Code, the jurisdiction of the Commission is exclusive. In the case now before us this administrative remedy had not been exhausted and the district court was without jurisdiction to consider the controversy.

III. We now consider whether portions of chapter 490A are so vague, indefinite and uncertain as to constitute an illegal delegation of legislative power, as found by the trial court. We disagree with that finding.

Section 490A.8 provides in part as follows, "Every public utility is required to furnish reasonably adequate service and facilities * * *" Section 490A.2 provides in part. "The commission shall have broad general powers to effect the purposes of this chapter * * *."

■ It is generally recognized that some legislative power may be delegated to administrative bodies. The practice of doing so has increased as the range and complexity of governmental functions continue to expand. It has been said that government could not be efficiently carried out if something were not left to the judgment and discretion of administration officers to accomplish in detail what is authorized or

required by law in general terms. Butler v. Commonwealth, 189 Va. 411, 53 S.E.2d 152. The test—not always easy to apply—is whether such delegation is a reasonable one permitting the administrative body only to "fill in the details" to accomplish a general purpose or policy announced by the legislature itself or whether it abdicates to the administrative body the right to legislate.

Courts have generally recognized that administrative needs are becoming more and more demanding. In Pressman v. Barnes, 209 Md. 544, 555, 121 A.2d 816, 822, we find this, "Modern tendency is * * * toward greater liberality in permitting grants of discretion to administrative officials * * * as the complexity of governmental and economic conditions increases." In Gilman v. City of Newark, 73 N.J.Super. 562, 180 A.2d 365, 384, that same view is stated this way. "The mere fact that standards * * are general rather than specific does not militate against their acceptance and validity. The exigencies of modern government have increasingly dictated the use of general rather than detailed standards in regulatory enactments. * * * See also Esso Standard Oil Company v. Holderman, 75 N.J.Super. 455, 183 A.2d 454, 464.

Perhaps no case has been more tolerant of administrative power than Warren v. Marion County, 222 Or. 307, 353 P.2d 257, 261, where the court said, "There is no constitutional requirement that all delegation of legislative power must be accompanied by a statement of standards circumscribing its exercise. * * *"

While we have never gone that far, our own decisions confirm the philosophy that the standards set up need not be exact or precise if general policy is defined.

In Nobel v. English, 183 Iowa 893, 895, 167 N.W. 629, in upholding the right of the Commissioner of Insurance to refuse a license "for good cause," which in this case was solely the nonresidence of the applicant, we said, "It is manifest that the legislature in seeking to control the management of businesses * * * cannot always antici-

pate and forsee all the conditions that may arise * * * which may affect the public interest. It therefore, may, delegate to the ministerial officers certain powers, somewhat judicial in their nature, the exercise of which is essential to the proper and effectual carrying out of the purpose and object of the law itself * * *. This is the theory upon which legislative regulation is based." In Gilchrist v. Bierring, 234 Iowa 899, 14 N.W.2d 724, we upheld the right of the Cosmetology Board to make rules and regulations as to "sanitary conditions." Hubbell v. Higgins, 148 Iowa 36, 126 N.W. 914, approved the delegation of somewhat similar authority to an inspector charged with the duty of determining whether hotels were of "approved fireproof construction" or maintained in "approved sanitary condition." More recently in Danner v. Haas, 257 Iowa 654, 134 N.W.2d 534, we held a statute permitting the Department of Public Safety to determine if a violation was "serious" a sufficient standard to permit the department to use its discretion and judgment. There we point out decisions from other jurisdictions holding to like effect which we need not repeat here. Similar results may be found in Trustees of Village of Saratoga Springs v. Saratoga Gas, Electric Light and Power Company, 191 N.Y. 123, 83 N.E. 693, 18 L.R.A.,N.S., 713, and International Railway Company v. Public Service Commission, 264 App.Div. 506, 36 N.Y.S.2d 125. Some recent decisions suggest that the matter of standards or guidelines is not as important as procedural safeguards. This theory is stated by Davis in his Administrative Law Treatise, section 2.10, page 113, as follows, "Judicial opinions which pass upon the validity of delegations of the power of adjudication rather uniformly revolve around adequacy of standards, but in many cases one may surmise that the motivating force has more to do with presence or absence of procedural safeguards. Some state delegations held unconstitutional probably would be invalidated by any court, not because of indefiniteness of standards, but because of the arbitrary power conferred."

In Esso Standard Oil Company v. Holderman, supra, 183 A.2d at page 464 we find this, "The modern and perferred approach is in favor of flexibility and liberality insofar as standards for delegation are concerned while exerting close judicial supervision over fairness of adjudicative procedures." In Warren v. Marion County, supra, the same thing is said this way, " * * * The important consideration is not whether the statute delegating the power expresses *standards* but whether the procedure established for the exercise of the power furnishes adequate *safeguards* to those who are affected by the administrative action."

■ We have always held to the adequate standards or guidelines test in determining the propriety of delegation of legislative power to administrative bodies, but we agree the presence or absence of procedural safeguards is important in determining whether this delegation is reasonable. With such safeguards interested parties are protected against arbitrary and capricious conduct on the part of administrative officials. Without them they may easily become the victims of such conduct. See Davis, Administrative Law Treatise, sections 2.01–2.16, pages 75–158. Applying these rules to the facts now before us, we find section 490A.8 requiring every public utility to furnish reasonably adequate service and facilities to be a sufficient standard or guideline to permit the Commerce Commission to determine what "reasonably adequate service and facilities" are. The general purpose and policy of chapter 490A is to vest in the Iowa Commerce Commission broad control and supervision over those who furnish what is frequently referred to as public services.

Here we are concerned with those engaged in the business of furnishing the means of transmitting telephonic communications. "Service and facilities" as used in section 490A.8 certainly was intended to encompass the entire method and manner by which this is accomplished. "Service" is defined as "any result of useful labor which does produce a tangible commodity." Webster's New International Dictionary, 3rd Edition. "Facilities" has reference to the physical plant and equipment necessary to render "service."

■ We hold the Iowa State Commerce Commission was properly authorized by chapter 490A to determine the reasonableness of service and facilities furnished by public utilities. This view is given support by the procedural safeguards contained in the chapter. Section 490A.3 provides for a hearing upon reasonable notice; section 490A.12 provides for rehearing before the Commission; section 490A.13 sets up appeal to the district court as a matter of right; and section 490A.19 establishes a right of appeal to this court. This effectively precludes any possibility of arbitrary, illegal or capricious conduct on the part of the administrative body involved.

The standards could well have more detailed and certain, but they are sufficient. As we said in Danner v. Hass, supra, we "must work with the material provided us."

For the reasons stated we hold that the district court was without jurisdiction to consider this cause until the Iowa Commerce Commission had first determined the matters submitted to it. We hold further the motions to dismiss plaintiffs' petition should have been sustained, and this matter is reversed and remanded for entry of such an order.

Reversed.

All Justices concur.