STATE of Iowa, Appellant,

v.

Henry STEENHOEK, Jesse Wright and
Gary Wright, Appellees.

No. 53555.

Supreme Court of Iowa.

Dec. 15, 1970.

Rehearing Denied Feb. 9, 1971.

**378**

Richard C. Turner, Atty. Gen., Roxanne Barton Conlin, Asst. Atty. Gen., and Lester C. Johnson, County Atty., Newton, for appellant.

Scalise, Scism, Gentry & Brick, Des Moines, for appellees.

MASON, Justice.

The cases consolidated here arose by indictments returned against Henry Steenhoek, Jesse Wright and Gary Wright by a Jasper County grand jury accusing them of the crime of destroying food products to increase the price thereof in violation of section 734.1, Iowa Code, 1966, in that they did willfully destroy food products to-wit: killing of hogs with the intent to raise the price thereof without first obtaining the consent or authority of the Jasper County Board of Health.

Defendants file motions for bills of particulars and. demurrers. They assert in one division of their demurrers live hogs are not food products within the purview of the statute and in the other division allege section 734.1 is unconstitutional because: (1) it delegates to a non-legislative body powers legislative in nature; (2) it fails to fix criteria or guidelines for exercise of the power putatively delegated; (3) it is vague, and void as a consequence; (4) it purports to vest in boards of health power to permit or deny—that is, issue or withhold—licenses which authorize destruction of food products for the purpose of affecting the price of those products.

The court sustained the demurrers on the basis the indictments returned contained matters which constituted a legal bar to the prosecution, dismissed and discharged the defendants.

Defendants had slaughtered 100 or more hogs by shooting and dumping their carcasses in an open ditch which they then covered. The intent of the defendants was to raise hog prices.

The State appeals from this ruling.

Section 734.1 Code, 1966, was amended by Acts of the Sixty-second General Assembly, chapter 163 section 64 effective before the date of the offense charged. It now provides:

"Waste of food products to increase prices: It shall be unlawful for any person, firm, or corporation to willfully destroy, or negligently suffer to go to waste, with intent to increase the price thereof, any food products of any nature or description, without the authority or consent of the local board of health in whose jurisdiction the food products are located."

I. The first issue presented by this appeal is whether live hogs are food products within the meaning and intent of the statute.

■■■■ Ordinarily, where the legislature defines its own terms and meanings in a statute, the common law and dictionary definitions which may not coincide with the legislative definition must yield to the language of the legislature. Young v. O'Keefe, 246 Iowa 1182, 1186, 69 N.W.2d 534, 537 and citations. However, when the legislature has not defined words used in the statute the court must then determine as best it can the meaning of the language in accordance with the legislative intent so as to prevent absurdities and incongruities that may prevent justice. 2 Sutherland Statutory Construction, Third Ed., (Frank E. Horack, Jr.), section 4814.

The key words in the statute are "any food products." Thus, we must look to the common law and dictionary definitions to determine what "any food products" means since the legislature has seen fit not to define the terms contained within the statute. The word "product" is defined in the Random House Dictionary of the English Language, at page 1148, (Unabridged Edition, 1966) as "a thing produced by labor." Another definition of the word "product" is found in Funk and Wagnalls, New Standard Dictionary of the English Language, at

page 1977, (1933) where the word is defined as "anything obtained as a result of some operation of work, as by generation, growth, labor, chemical reaction, study, or skill; anything produced; products of the soil." In sum, then, the word "product" means anything produced. Brown v. Cummins Distilleries Corporation, 53 F.Supp. 659, 664 (W.D.Ky., 1944).

The word "food" has generally been interpreted to mean "that which is eaten or drunk for nourishment," 36A C.J.S. Food § 1, or "all that is eaten for nourishment of the body." 35 Am.Jur.2d, Food, section 1. Thus, food is anything consumable which is capable of sustaining life processes. Meaning of the word "any" has been considered by this court in Iowa-Illinois Gas & Elec. Co. v. City of Bettendorf, 241 Iowa 358, 363–364, 41 N.W.2d 1, 4–5 and Herman v. Muhs, 256 Iowa 38, 41, 126 N. W.2d 400, 402, 7 A.L.R.3d 1199, 1203 and determined to be synonymous with "every" and "all."

Where a statute, as here, has not previously been before this court for interpretation we must ascertain and give effect to the intention of the legislature. "* * * Under these circumstances we are obliged to examine both the language used and the purpose for which the legislation was enacted." Dobrovolny v. Reinhardt, 173 N.W.2d 837, 840 (Iowa 1970) and citations. See also Janson v. Fulton, 162 N.W.2d 438, 442–443 (Iowa 1968), Hedges v. Conder, 166 N.W.2d 844, 852 (Iowa 1969) and State v. Hanna, 179 N.W.2d 503, 506–507 (Iowa 1970) where the fundamental rules of statutory construction and interpretation are discussed with further citation of authorities.

In interpreting "a statute this court has time and again said that the courts are required to interpret the language used by the legislature, fairly and sensibly in accordance with the plain meaning of the words used." Green v. Brinegar, 228 Iowa 477, 479–480, 292 N.W. 229, 230.

Smith v. City of Fort Dodge, 160 N.W. 2d 492, 497 (Iowa 1968) contains this statement: "In reading a statute we are required to give words of common usage their commonly-understood meaning unless it is clear from a reading of the statute that a different meaning was intended, or unless such construction would defeat the manifest intent of the legislature. * * * [citing authorities]."

■ The plain, ordinary, sensible interpretation of the phrase "any food products" is that anything being produced or produced to sustain life's processes falls within the commonly-understood and used meaning of the words contained in this statute. The words "any nature or description" appearing in the statute after the phrase being considered indicate a clear legislative intent that the phrase "any food products" should have the broadest possible meaning consistent with good canons of statutory construction.

■ In view of our interpretation of the statute we find a hog, live or dead, is a thing being produced or produced to sustain life's processes and the killing of the hog falls within the proscription of the statute.

II. In its second error the State challenges correctness of the trial court's ruling sustaining defendants' demurrers upon the basis urged in division II thereof, that is, unconstitutionality of section 734.1.

This assignment presents the issue whether this section exceeds the State's policing powers.

Before considering the grounds alleged in the demurrers we state "some thoroughly established principles which must be followed in all cases where questions of constitutionality are involved."

They are summarized in Danner v. Hass, 257 Iowa 654, 661, 134 N.W.2d 534, 539 in this manner: "all presumptions are indulged in favor of constitutionality; one who attacks the statute, alleging unconsti-

tutionality, must prove its invalidity beyond a reasonable doubt; that a law may work hardship does not render it unconstitutional; if any reasonable basis may be conceived which supports the statute, it will be upheld, and the challenger must negative all possible bases; the courts are not concerned with the wisdom, justice, policy, or expediency of a statute; and we will adopt a liberal interpretation of the constitution in favor of the constitutionality of legislation."

III. Defendants, in support of their claim of unconstitutionality, first contend the section delegates legislative powers to a non-legislative body, namely, the local board of health.

■ Before a court may be justified in holding a statute unconstitutional as a delegation of legislative power, it must clearly appear that the power involved is purely legislative in nature—that is, one appertaining exclusively to the legislative department. Montana-Dakota Utilities Co. v. Johanneson, 153 N.W.2d 414, 421 (N.D. 1967); Annot., 79 L.Ed. 474, 484–487 and 16 Am.Jur.2d, Constitutional Law, section 242 and cases cited in support of the text.

Legislative power is defined in Am.Jur. 2d, supra, in this manner:

"Purely legislative power, which can never be delegated has been described as the authority to make a complete law— complete as to time when it shall take effect and as to whom it shall be applicable —and to determine the expediency of its enactment.

"* * *. While a legislative body cannot abdicate its general lawmaking powers it may authorize others to do things which it might properly do, but which it cannot conveniently or advantageously perform."

■ If the power delegated be properly restricted so that it carries out the plan after the legislature has layed down an intelligible goal and complete declaration of policy which is definite in describing the

subject to which it relates or the field wherein it shall apply, then this would be a proper delegation of powers. Lee Enterprises, Inc. v. Iowa State Tax Comm'n, 162 N.W.2d 730, 742 (Iowa 1968) and authorities cited.

■ Examination of the nature of the powers delegated to the local board of health in the statute establishes the legislature has clearly defined the policy in that no one shall destroy food products with the intent of driving up prices without the approval of a local health board. Obviously, the legislature contemplated a large destruction of food products would be necessary in order to have effect upon farm marketing prices. Certainly, destruction of small quantities will not have any substantial effect upon the nature of the American agricultural market place. Therefore, the policy is an intelligible one and completely describes the subject matter in that to destroy a large quantity of food without adequate precautions will create a health problem of monumental proportions in this state which the legislature sought to regulate by enacting this statute.

The test we have used to decide whether legislation is a proper exercise of a state's police power which can be delegated is "whether the collective benefit therefrom outweighs the specific restraint imposed thereby." Iowa Natural Resources Council v. Van Zee, 158 N.W.2d 111, 116 (Iowa 1968). Furthermore, the means used by the legislature must be rationally related to the end sought. Pierce v. Inc. Town of La Porte City, 259 Iowa 1120, 1124–1125, 146 N.W.2d 907, 909–910. In applying this test, we find the collective benefits to public health outweighs the restraint of obtaining a license and the means used is rationally related to the end sought. The statute constitutes a proper delegation of police power. McLeland v. Marshall County, 199 Iowa 1232, 1239, 201 N.W. 401, 404, 203 N.W. 1 and Schneberger v. State Board of Social Welfare, 228 Iowa 399, 404, 291 N.W. 859, 861, both cited by the State, furnish support for our position.

IV. Defendants next contend the statute fails to set forth sufficient guidelines or fix criteria for the exercise of the power delegated. In Danner v. Hass, supra, 257 Iowa at 662–664, 134 N.W.2d at 540–541 this court referred to numerous instances where great leeway was allowed the legislature in setting forth guidelines.

In Zilm v. Zoning Board of Adjustment, 260 Iowa 787, 794, 150 N.W.2d 606, 610 we observed that the trend of modern decisions is toward greater liberality in the setting of standards and to require less exactness in them in legislative enactments. In Elk Run Telephone Co. v. General Telephone Co., 160 N.W.2d 311, 316–317 (Iowa 1968) we quoted with approval this statement from Gilman v. City of Newark, 73 N.J.Super. 562, 180 A.2d 365, 384, "The mere fact that standards * * * are general rather than specific does not militate against their acceptance and validity. The exigencies of modern government have increasingly dictated the use of general rather than detailed standards in regulatory enactments. * * *."

Later in the Elk Run opinion we noted that " * * * The important consideration is not whether the statute delegating the power expresses *standards* but whether the procedure established for the exercise of the power furnishes adequate *safeguards* to those who are affected by the administrative action." (emphasis in the original).

■ Our own decisions confirm the philosphy that the standards set up need not be exact or precise if general policy is defined. Elk Run Telephone Co. v. General Telephone Co., 160 N.W.2d at 316.

■ The general policy of the legislature is clearly indicated in section 734.1 and statutes read in pari materia. Chapter 137, Code, 1966, sets up the board of health and gives them general powers over the welfare of the citizens of the state in

matters pertaining to health. Section 137.3 states that local boards shall consist of five members one of which must be a doctor. Section 137.6 gives local boards power to enforce state health laws and rules and lawful orders of the state department. Section 137.7 allows local boards of health to issue licenses and permits and charge reasonable fees therefor in relation to the collection and disposal of solid wastes.

It thus is apparent that section 734.1 is not concerned with anything but the health and welfare of the local community especially where it concerns the disposal of large amounts of food products other than by consumption within the community.

The standards fixed are sufficient.

 V. As another ground for demurrer defendants insist the statute is vague and consequently void as it fails to establish what conduct is criminal and does not itself conclusively identify any action as criminal. This, they contend, is the fundamental defect of the statute.

"Without question, a law forbidding or requiring conduct in terms so vague that men of common intelligence must necessarily guess and differ as to its meaning violates due process. * * * [citing authorities].

"However, a statute is not so vague and uncertain as to be void where the meaning of words used can be fairly ascertained by reference to similar statutes, other judicial determinations, reference to the common law, to the dictionary, or if the words themselves have a common and generally accepted meaning. * * * [citing authorities]." Powers v. McCullough, 258 Iowa 738, 746, 140 N.W.2d 378, 384.

A similar contention of unconstitutionality directed to another of our statutes because of vagueness and indefiniteness was rejected in State v. Williams, 171 N.W.2d 521, 527 (Iowa 1969) where in quoting from two earlier Iowa cases we referred to established rules in this language:

" 'That the terms of a penal statute creating a new offense must be sufficiently explicit to inform those who are subject to it what conduct on their part will render them liable to its penalties is a well-recognized requirement, consonant alike with ordinary notions of fair play and the settled rules of law; and a statute which either forbids or requires the doing of an act in terms so vague that men of common intelligence must necessarily guess at its meaning and differ as to its application violates the first essential of due process of law. (Citation.)

" '* * * "The legislature, * * *, must inform the citizen with reasonable precision what acts it intends to prohibit, so that he may have a certain understandable rule of conduct, and know what acts it is his duty to avoid. * * * It is axiomatic that statutes creating and defining crimes cannot be extended by intendment. Purely statutory offenses cannot be established by implication. * * *." ' "

However, this quotation from American Communications Assn., CIO v. Douds, 339 U.S. 382, 412, 70 S.Ct. 674, 691, 94 L.Ed. 925, 951 quoted with approval by this court in State v. Elliston, 159 N.W.2d 503, 507 (Iowa 1968) is apposite to defendants' contention here. " 'The argument as to vagueness stresses the breadth of such terms as "affiliated," "supports" and "illegal or unconstitutional methods." There is little doubt that imagination can conjure hypothetical cases in which the meaning of these terms will be in nice question. The applicable standard, however, is not one of wholly consistent academic definition of abstract terms. It is, rather, the practical criterion of fair notice to those to whom the statute is directed. The particular context is all important.' "

Section 734.1 contains widely used and well understood words. "Dictionary definitions need not be set out. The statute clearly and precisely delineates its reach in

words of common understanding. It is a precise regulatory statute evincing a legislative judgment that certain specific conduct be prohibited. Its meaning is clear to men of intelligence including those whose duty it is to enforce it. Our conclusion is well supported * * *. [citing authorities]." State v. Elliston, supra, 159 N.W. 2d at 507.

Guided by the principles announced in the foregoing authorities we reject the contention the statute is so vague and indefinite as to violate due process.

■ VI. The final argument made is that the statute is unconstitutional in that it deprives a person of the use of private property without due process of law. However, it is well settled that the use of private property can be limited by a reasonable exercise of police powers in matters of health and welfare of the general public. Iowa Natural Resources Council v. Van Zee, supra, 158 N.W.2d at 116; Pierce v. Inc. Town of La Porte City, supra, 259 Iowa at 1124–1125, 146 N.W.2d at 909–910; City of Des Moines v. Manhattan Oil Co., 193 Iowa 1096, 1105–1112, 184 N.W. 823, 827–829 (rehearing on other issues) 188 N.W. 921, 23 A.L.R. 1322, 1331–1333; State v. Schlenker, 112 Iowa 642, 645–646, 84 N.W. 698, 699; 16 Am.Jur.2d, Constitutional Law, section 290.

Section 734.1 is not constitutionally defective in the respect urged by defendants in this part of their argument. The legislature in enacting this statute did not pass limits prescribed by the federal or state constitutions as those provisions have been interpreted in the foregoing authorities. Nor can it be logically claimed that the statute is being used as a cloak under which to disregard constitutional rights or restrictions. Defendants have failed to show that any property will be taken without due process of law.

Defendants further insist the statute leaves them to the "vagaries" of that local board of health within whose jurisdiction

the act is committed. They argue that unequal, not equal protection of the laws is assured.

■ We presume health officials having discretionary power will not arbitrarily and capriciously use that power. The mere fact that such a statute gives such powers to them will not result in the statute being held unconstitutional on the supposition that they may possibly act arbitrarily and capriciously.

Support for this position is found in State v. Miller, 146 Iowa 521, 524–525, 124 N.W. 167, 168 where the court said:

"* * * A statute is not unconstitutional because it provides a board for certain purposes and gives such board discretion. Such a statute does not discriminate against any class of citizens. * * *. Nor does it confer upon the board * * * arbitrary power, or enable them to discriminate in favor of any particular * * * [citizen]. While the board acts within its reasonable discretion, it will be protected, but, when it seeks to go beyond that and to act illegally, the court will interfere. * * *. The statute itself furnishes no warrant for an unjust discrimination, and the courts will not presume for the purpose of holding it unconstitutional that the board will exceed its power, or do any unlawful act."

Further support for this proposition is found in Burlington, C. R. & N. Ry. Co. v. Dey, 82 Iowa 312, 339, 48 N.W. 98, 105; Brady v. Mattern, 125 Iowa 158, 169, 100 N.W. 358, 363; Spurbeck v. Statton, 252 Iowa 279, 286, 106 N.W.2d 660, 664, and State v. Rivera, 260 Iowa 320, 325, 149 N. W.2d 127, 131 and in the authorities cited in these opinions.

Defendant's argument is without merit.

Section 734.1 is not a licensing statute but the proper exercise of a police power to prevent a health hazard. In order to carry out this purpose economically and ef-

ficiently from a governmental view point, the local government has been granted fairly broad discretionary powers in administering this law.

In view of our determination of the purpose of this statute the legislative classification is reasonable.

█ Of course, judgment of the trial court filed October 11, 1968 is a finality with respect to discharge of defendants, but its action in sustaining demurrers to the indictments on the grounds urged by defendant is—Reversed, but not remanded since second session, Acts of the Sixty-third General Assembly, chapter 1282, section 2 amending Code section 777.8 did not become effective until July 1, 1970. It has no application here.

All Justices concur except RAWLINGS, J., who concurs in the result and UHLEN-HOPP and BECKER, JJ., who dissent.

UHLENHOPP, Justice (dissenting).

Individuals who destroy products not for the purpose of influencing prices are not required to obtain a permit from the county board of health. Individuals who destroy food products to increase prices must obtain such a permit. Thus the statute essentially deals with prices. Yet the statute contains no guidelines. The county board of health has unfettered control over those they will and will not grant a permit. As stated in Central States Theatre Corp. v. Sar, 245 Iowa 1254, 1260, 66 N.W.2d 450, 454:

"There are no standards fixed, no guideposts set up, no beacons lighted to show the trustees how far they may or may not go in granting or denying the license without which the stated businesses may not be operated. The trustees may, so far as the statute goes, deny any applicant a license for a good reason, for a bad reason, or for no reason."

BECKER, J., joins in this dissent.