703 So.2d 1076 (1997)
Kimberly BALAS and Teresa Shumate, Petitioners,
v.
Marjorie A. RUZZO, and Exec., Inc., etc., Respondents.
No. 97-82.
District Court of Appeal of Florida, Fifth District.
October 10, 1997.
As Modified on Grant of Clarification January 2, 1998.
Richard E. Johnson and Heather Fisher Lindsay, of Spriggs & Johnson, Tallahassee, for Petitioners.
Mark S. Peters of Amari, Theriac & Eisenmenger, P.A., Cocoa, for Respondents.
W. SHARP, Judge.
Balas and Shumate petition this court for a writ of certiorari to review certain portions of the lower court's order which granted, in part, a motion to compel discovery filed by respondents Ruzzo and Exec., Inc. Petitioners argue that those portions depart from the essential requirements of law and will cause them irreparable harm because they will be compelled to disclose intimate details of their sexual history. We decline to issue the writ of certiorari.
Balas and Shumate filed suit against Ruzzo and Exec, Inc., doing business as "The Boardroom." According to Balas and Shumate, The Boardroom operates ostensibly as *1077 a leisure spa but actually is a house of prostitution. Balas worked at The Boardroom from December 1993 until February 1996; Shumate worked there from October 1992 until March 1996. Ruzzo, the sole officer and shareholder of Exec, Inc., collected about fifty to sixty percent of each employees' earnings from performing sexual acts.
According to Balas and Shumate, Ruzzo exerted mental and emotional control over her employees and thus she was able to exploit them as prostitutes. Ruzzo required her employees to pay her substantial sums of money to attend "metaphysical workshops" conducted by Ruzzo or persons associated with her. At the work place, the employees were required to participate in religious and quasi-religious "circles," rituals and incantations. These practices were allegedly designed to break down the personalities of the women who worked for Ruzzo and to foster dependency and loyalty to herself. At one time when the earnings of a new employee were missing and believed to be stolen, Ruzzo required that the petitioners be strip searched and body cavity searched. Ruzzo caused the petitioners to believe their continued employment was dependent on their submission to these searches and that they might be arrested on felony charges if they refused to submit to the searches.
Balas and Shumate's second amended complaint against Ruzzo contains seven counts. Count I is an action for coercion of prostitution pursuant to section 796.09, Florida Statutes. Petitioners allege the requirement that they perform sexual acts to retain their employment constitutes inducement and coercion to engage in prostitution. Count II is a claim for battery for the unwanted and offensive touching of the petitioners' bodies. Count III is a claim for false imprisonment for physically confining the petitioners against their will. Count IV alleges that respondents' actions constituted an invasion of petitioners' privacy. Count V is a claim for the intentional infliction of emotional distress. Count VI alleges a civil rights actionthat respondents have violated petitioners' right to be free from crimes of violence motivated by gender within the meaning of 42 U.S.C. section 13981. Finally, count VII seeks civil remedies for criminal practices or racketeering pursuant to section 772.104, Florida Statutes. The petitioners claim that they suffered emotional pain, anguish, humiliation, insult, indignity, loss of self-esteem, inconvenience, hurt and emotional distress. They seek an award of general and punitive damages, among other relief.
The discovery to which the petitioners are being required to respond is as follows:

I.
Interrogatory 8: Please advise how long have you been engaged in prostitution....

II.
Interrogatory 22: State with specificity the manner in which the acts as described in your Complaint have materially affected how you interact with your husband, boyfriend, fiancée' [sic] or any other individual of the opposite sex.

III.
Request for Production 30: A copy of any photographs, movies or videotapes in which you performed sexual acts and/or simulated sexual acts in exchange for money or other consideration.

IV.
Interrogatory 16: Please list the names, addresses, telephone numbers and rates of pay for all employers for which you worked, including the nature of the work, during the five years immediately preceding the date of employment with the Boardroom and from the date of your termination with the Boardroom to the present, providing the names of your immediate supervisors at each place of employment and the reason for your leaving each place of employment.

V.
Interrogatory 26: Please state your total income while employed at the Boardroom, and state the source of that income including any income from other employment or *1078 income earned from prostitution other than at the Boardroom.

VI.
Request for Production 34: Business records from any selfemployment or owned business ventures in the last 5 years, including any records or list of customers, "special customer lists" or "sugar daddy's list."
Discovery in civil cases must be relevant to the subject matter of the case and must be admissible or reasonably calculated to lead to admissible evidence. See Allstate Insurance Co. v. Langston, 655 So.2d 91 (Fla.1995); Amente v. Newman, 653 So.2d 1030 (Fla.1995); Russell v. Stardust Cruisers, Inc., 690 So.2d 743 (Fla. 5th DCA 1997). The concept of relevancy is broader in the discovery context than in the trial context and a party may be permitted to discover evidence that would be inadmissible at trial, if it would lead to the discovery of relevant evidence. Allstate; Amente. Florida Rule of Civil Procedure 1.280(b)(1) delineates the proper scope of discovery:

In General. Parties may obtain discovery regarding any matter, not privileged, that is relevant to the subject matter of the pending action, whether it relates to the claim or defense of the party seeking discovery or the claim or defense of any other party, including the existence, description, nature, custody, condition, and location of any books, documents, or other tangible things and the identity and location of persons having knowledge of any discoverable matter. It is not ground for objection that the information sought will be inadmissible at the trial if the information sought appears reasonably calculated to lead to the discovery of admissible evidence.
Nonetheless, the discovery of certain kinds of information may cause material injury of an irreparable nature. This includes the "cat-out-of-the-bag" material that could be used to injure another person or party outside the context of the litigation, material protected by privilege, trade secrets or work product. Discovery was never intended to be used as a tactical tool to harass, embarrass or annoy one's adversary. Rather, pretrial discovery was implemented to simplify the issues in a case, to eliminate the elements of surprise, to encourage the settlement of cases, to avoid the cost of litigation, and to achieve a balanced search for the truth to ensure a fair trial. Elkins v. Syken, 672 So.2d 517 (Fla.1996).
Here the petitioners argue that the information sought to be discovered regarding prostitution and their sexual activities was propounded solely to embarrass them and to invade their right to privacy. The petitioners also claim that this information is privileged under section 796.09 and is not calculated to lead to evidence which would be admissible at trial.
Section 796.09 provides a person with a civil cause of action for compensatory and punitive damages against anyone who coerces that person into prostitution, who coerces that person to remain in prostitution, or who uses coercion to collect or receive any part of that person's earnings derived from prostitution. In the course of litigation under this section, any transaction about which a plaintiff testifies or produces evidence does not subject the plaintiff to criminal prosecution or to any penalty or forfeiture. In addition, any testimony or evidence or any information produced by the plaintiff or witness for the plaintiffs cannot be used against the plaintiffs or witness in any other investigation or proceeding, except one for perjury.
Section 796.09(5) specifically provides that it is not a defense that the plaintiff was paid or otherwise compensated for prostitution, that the plaintiff had engaged in prostitution prior to any involvement with the defendant or that the plaintiff made no attempt to escape from the defendant. Section 796.09(6) provides that convictions for prostitution or prostitution-related offenses are inadmissible for the purpose of attacking the plaintiffs' credibility.
This legislation was the result of the Florida Supreme Court Gender Bias Study Commission, which conducted an extensive investigation of prostitution in this state. The Commission's activities included interviews with law enforcement and corrections personnel, *1079 judges, public defenders, prosecutors, drug rehabilitation counselors, social workers, medical personnel, prostitutes, clients and pimps. The Commission found prostitution to be prevalent and uniform throughout the state and law enforcement largely unable to deter it under prevailing social attitudes and judicial practices. The Commission further found that prostitutes are often victims of economic, physical, and psychological coercion, that most persons do not chose to become prostitutes, but do so to survive, and that ninety percent of street prostitutes, both adult and children, are controlled by pimps who use a variety of coercive methods to maintain this control. The Commission determined that clients and pimps are rarely prosecuted and, when prosecuted, receive light sentences; whereas prostitutes, who are mainly females, are frequently prosecuted and receive harsher treatment in the courts. The Commission recommended changes in the methods of intervention in prostitution from punitive to therapeutic, changes in the law to require more equal treatment by the courts of the prostitute in relation to the client and the pimp and to lessen the incentive to traffic in human flesh by giving the prostitute access to the judicial system without first having to be arrested.
Under section 796.09, the petitioners' prior involvement in prostitution and their earnings from prostitution would be irrelevant. Hence discovery should not be permitted because such information would not be admissible at trial nor would it be reasonably calculated to lead to evidence ultimately admissible at trial. Even though the scope of discovery is generally quite broad, section 796.09 is designed to encourage prostitutes to sue their pimps. Thus the usually broad scope of discovery may be constricted so that prostitutes will not be embarrassed, harassed or hindered in their actions.
Had the petitioners brought their lawsuit against Ruzzo and The Boardroom only under section 796.09, evidence of petitioners' past prostitution, including with the Boardroom, and their earnings relating to such activities, may not have been discoverable. However, the petitioners filed a multi-count complaint for compensatory and punitive damages, alleging numerous causes of action against the respondents. These other causes carry no such protection from discovery. Since the information sought by discovery may be relevant or may lead to the discovery of admissible evidence in one or more of these other causes of action or to determination of damages, we cannot conclude that the trial court departed from the essential requirements of law in granting this discovery. See Smith v. TIB Bank of the Keys, 687 So.2d 895 (Fla. 3d DCA 1997) (by alleging fraud as well as breach of contract, purchaser placed at issue her reliance on venders' assertions, the veracity of financial documents she submitted to the vender, and the state of her mental health, including memory problems she was experiencing at the time of the alleged tortious conduct, thus deposition questions concerning her state of mind were relevant).
Petition for Writ of Certiorari DENIED.
THOMPSON, J., concurs.
HARRIS, J., concurs specially with opinion.
HARRIS, Judge, concurring specially:
There is a temptation in cases such as this to inquire which, the pot or the kettle, is imbued with the darker hue. Indeed that may ultimately be the question uppermost in the jurors' minds. But the issue presently before us is simply whether the pot, in order to establish the parties' comparative complexion, may discover the historical condition and the inherent characteristics of the kettle.
We are here involved with parties that the limited record before us indicates were co-conspirators in a joint effort to violate Florida's laws against prostitution. The defendants are the owner/operators of a "social club" whose primary service is prostitution; the plaintiffs are employees of the club who provide such services. The employees are suing the owner/operators for, among other counts, taking advantage of their vulnerabilities ("coercing" them to be prostitutes) through manipulation and exploitation. In order to prepare a defense to the action, defendants have filed certain interrogatories for the employees to answer. These interrogatories *1080 request such information as how long the employees have been engaged in prostitution; how the employees have been affected by the defendants' conduct; copies of photographs, movies, and videotapes in which the employees have performed sexual acts or simulated sexual acts; the names of previous employers and previous rates of pay; and a statement of income received from defendants. These interrogatories survived the employees' objections. I agree certiorari should be denied.
The employees' primary cause of action is based on section 796.09(1), Florida Statutes, which provides:
(1) A person has a cause of action for compensatory and punitive damages against:
(a) A person who coerces that person into prostitution;
(b) A person who coerces that person to remain in prostitution, or
(c) A person who uses coercion to collect or receive any part of that person's earnings derived from prostitution.
The employees resist discovery of their past prostitution or their past or present earning experience on the basis of subparagraph 5 of section 796.09:
(5) It does not constitute a defense to a complaint under this section that:
(a) The plaintiff was paid or otherwise compensated for acts of prostitution;
(b) The plaintiff engaged in acts of prostitution prior to any involvement with the defendant ...
But the question before us is not whether prior acts of prostitution (or the receipts of earnings therefrom) which might be revealed by answering the interrogatories could be used as a defense to the complaint, but rather whether evidence of such conduct or such earnings would be relevant in determining whether the employees were, in fact, "coerced" into prostitution, into remaining prostitutes, or into sharing the proceeds of their services with defendants. The relevancy of this information depends, of course, on what constitutes coercion.
If we apply the definition of "coercion" which is commonly accepted, then the relevancy of the requested information is apparent and this appeal has no merit at all. Webster defines "coercion" as: (1) to restrain or dominate by force, (2) to compel an act or choice, or (3) to enforce or bring about by force or threat. In sexual battery cases, the legislature has adopted the common meaning of the word "coercion" and has even placed limits on it. It has provided that consent will not be recognized if submission is coerced by threats of force or violence if the victim reasonably believes the perpetrator has the present ability to execute the threat.[1] Consent also will not be recognized if submission is coerced by a threat of retaliation against the victim or another if the victim reasonably believes that the perpetrator has the ability to execute the threat in the future.[2] And in sexual battery cases, the legislature has vitiated what might otherwise be considered as consensual if one exploits a known physical or mental weakness of the victim to achieve his or her goal or takes advantage of one who is physically helpless or involuntarily intoxicated.[3] Therefore, even in sexual battery cases, before coercion or exploitation will vitiate consent, the free will of the victim must be overcome by force or threat or some unfortunate circumstance suffered by the victim.
But then we get to the definition of "coercion" contained in section 796.09(3):
(3) As used in this section, the term "coercion" means any practice of dominion, restraint, or inducement for the purpose of or with the reasonably foreseeable effect of causing another person to engage in or remain in prostitution or to relinquish earnings derived from prostitution, and includes, but is not limited to:
(a) Physical force or threats of physical force.
(b) Physical or mental torture.
(c) Kidnapping.

*1081 (d) Blackmail.
(e) Extortion or claims of indebtedness.
(f) Threats of legal complaint or report of delinquency.
(g) Threat to interfere with parental rights or responsibilities, whether by judicial or administrative action or otherwise.
(h) Promise of legal benefit.
(I) Promise of greater financial rewards.
(j) Promise of marriage.
(k) Restraint of Speech or communications with others.
(l) Exploitation of a condition of developmental disability, cognitive limitation, affective disorder, or substance dependency.
(m) Exploitation of victimization by sexual abuse.
(n) Exploitation of pornographic performance.
(o) Exploitation of human needs for food, shelter, safety, or affection.
The definition urged by the employees herein is the "promise of a greater financial reward." Whether the requested information is relevant to the issue of coercion in this case will depend on what the legislature intended by subsection (I) in the meaning of "coercion."
I agree with Judge Altenbernd's thoughtful analysis in State v. Brigham, 694 So.2d 793 (1997):
There can be no dispute that the legislature's unusual definition of "percent" is not a common dictionary definition. This is perhaps an appropriate case in which to remind ourselves of Learned Hand's famous observation that a "mature and developed jurisprudence" does not "make a fortress out of the dictionary."
But even so, one would expect some nexus between the commonly accepted meaning of a word and the definition of that word ascribed by the legislature. If, for example, the legislature defined "canine" as including cats, although one might, jurisprudentially speaking, expect to hear a meow emanate from a Great Dane, the courts should nevertheless closely examine the legislative history to see if that is really what the legislature intended. The court in Young v. O'Keefe, 246 Iowa 1182, 69 N.W.2d 534, 537 (1955), stated this principle as follows: "But before a definition is construed so as to expand the meaning of a well-known word to include its antonym ..., the intention of the legislature to that effect must be clear." As Judge Campbell observed in Catron v. Roger Bohn, D.C., P.A., 580 So.2d 814, 818 (Fla. 2d DCA 1991):
It is our primary duty to give effect to legislative intent and, if a literal interpretation of a statute leads to unreasonable results, then we should exercise our power to interpret reason and logic to it.
* * * * * *
Unfortunately, it is apparent that in enacting this legislation, the legislature has, without redefining the terms for the purposes of this legislation, often used terms with commonly accepted meanings for purposes at great variance from those commonly accepted meanings.
In our case, the legislature did define the term for the purpose of the act. But because the term (coercion) as so defined can be interpreted two waysone consistent with the commonly accepted meaning and one at variancewe should not accept the "antonym" unless such legislative intent is clear. A free will decision, even if based on a hope of financial gain, is the opposite of a coerced decision.
The employees urge that the mere promise of a greater reward brings them within the act. But if the mere promise of a greater reward is sufficient to establish coercion, then anyone who makes a voluntary and reasoned exercise of free will motivated by the hope of economic gain has been coerced. This definition removes the element of compulsion implicit in the commonly accepted meaning of coercion and substitutes therefor the mere desire for financial gain. The employees herein assert that since they were offered "a greater financial reward" for providing the services performed by them through defendants' establishment, they were coerced into their prostitution activities. This equates the giving of an opportunity to make a decision with the coercion of that decision. But subsection (I) can also mean *1082 that the promise of a greater reward is coercion only if such promised reward is sufficient to overcome one's natural revulsion to selling one's body for money. If there is no such revulsion, there can be no coercion. Becoming a prostitute only because one likes the hours and wages or "because it beats the heck out of working for a living" simply should not meet the test of section 796.09(1).
At oral argument herein, it was suggested without contradiction, that at least one of the employees has a college degree and gave up a well-paying, legitimate job in order to engage in this profession for the greater reward. Section 796.09 does not appear to be a general prostitute's relief act. It is based on a report by the Gender Bias Study Commission which recommended the equalization of treatment in relation to the prostitute, the client and the "pimp." It is based on the premise that prostitutes are generally victims of economic, physical, and psychological coercion and choose prostitution in order to survive. Further, the Commission was concerned that 90 percent of the street prostitutes are controlled by "pimps" who use a variety of coercive methods to maintain control. It seems clear that the legislature was not intending to depart from the precepts of the commonly understood meaning of "coercion" and to redefine it to include both free will decisions and compelled decisions.. The interpretation urged by the employees seems at variance with the stated goal of the legislature and the Gender Bias Commission.
Since there is no cause of action provided for one who makes a reasoned and voluntary exercise of their free will to enter or continue in the profession solely for financial rewards (assuming "coercion" is given the definition more consistent with its commonly accepted meaning and assuming that my interpretation of legislative intent is correct), coercion becomes the critical issue in the trial of such action. The interrogatories propounded by defendants appear relevant to the issue of coercion.
This is a case of first impression based on a relatively new statute. As indicated, the legislative history of the new law suggests that the statute is designed to assist those who were forced to enter prostitution in order to keep a roof over their heads or food on their table. It does not appear to be intended to aid those who voluntarily enter the profession in order to drive a Mercedes instead of a Ford. The limited record before us indicates that even beginning employees of the defendants (those who do not have an established clientele) bring in $700 a day and can keep 50% of their earnings. Based on a five-day work week, this would reflect an income of $87,500 a year even with a two week vacation. And the employees herein are not beginners.
There is no indication that the legislature intended to legalize prostitution or to make it a respectable profession. It merely intended to place the prostitute on the same footing with the client and the "pimp." If a prostitute voluntarily makes the decision to participate, free from force, intimidation, or disadvantageous circumstance, then he or she is on the same footing as the other participants and should be treated the same.
Although it might well serve a legitimate public purpose to permit the cannibalistic demise of such enterprises (and I am not unsympathetic with this view), that does not appear to be the policy behind the current statute. Therefore, in cases where coercion is not present (and this may or may not be one), the court should continue its tradition of not interceding in civil conflicts involving transactions that are either illegal or are against public policy. See Wechsler v. Novak, 157 Fla. 703, 26 So.2d 884 (1946); Thomas v. Ratiner, 462 So.2d 1157, 1160 (Fla. 3d DCA 1984), rev. denied, 472 So.2d 1182 (Fla.1985) ("An action may lie for interference with an unenforceable contract and even perhaps a voidable contract. No such cause of action lies for interference with a contract void as against public policy [another's representation of a client obtained by a doctor/lawyer's illegal personal injury solicitation in the hospital] and which makes one who is a party thereto, as the appellant in the instant case, guilty of a criminal act for entering into such an agreement.")
We are not asked in this proceeding to rule on the admissibility of the discovered information as evidence at the trial of this cause. We are to determine only if the information might lead to admissible evidence. Even *1083 though we deny the Writ I suggest we certify the following question:
DOES ONE, FREE FROM FORCE, INTIMIDATION, OR DISADVANTAGEOUS CIRCUMSTANCE, WHO MAKES A REASONED DECISION TO BECOME OR REMAIN A PROSTITUTE OR TO SHARE THE PROCEEDS THEREOF BECAUSE OF A PROMISE OF A GREATER FINANCIAL REWARD HAVE A CAUSE OF ACTION UNDER SECTION 796.09(1), FLORIDA STATUTES?
ON MOTIONS FOR REHEARING, FOR CLARIFICATION, FOR CERTIFICATION, AND FOR REHEARING EN BANC
W. SHARP, Judge.
Petitioners Balas and Shumate have filed motions for rehearing, clarification and certification. We deny the motions in full except for one regard. We delete the sentence in the last full paragraph of the opinion which reads: "These other causes of action carry no such protection from discovery."
Motion for Clarification GRANTED as stated above; Motion for Rehearing and Certification DENIED.
HARRIS and THOMPSON, JJ., concur.
NOTES
[1] Section 794.011(4)(b), Florida Statutes.
[2] Section 794.011(4)(c), Florida Statutes.
[3] Section 794.011(4)(a),(d),(e), and (f), Florida Statutes.